[Civil No. 3178.  Filed June 13, 1932.]

[12 Pac. (2d) 285.]

JOSEPHINE S. A. YOUNG, Appellant, v. THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, a Corporation, Appellee.

Mr. Louis G. Hummel, for Appellant.

Messrs. Kingan, Darnell & Nave, for Appellee.

LOCKWOOD, J.—Josephine S. A. Young, hereinafter called plaintiff, brought suit against the Northwestern Mutual Life Insurance Company of Mil-

waukee, Wisconsin, a corporation, hereinafter called defendant, to recover upon a certain insurance policy issued by defendant on the life of Mannierre E. Young, hereinafter called deceased.

Defendant answered, admitting the execution of the policy, but alleging in substance that the same had lapsed by reason of the failure of the deceased, or any person for him, to pay certain installments of the premium due thereon. It was admitted by plaintiff that the installments in question were not paid, and when the case came on for trial defendant moved for judgment upon the pleadings. The motion was granted and judgment ordered in favor of defendant, from which judgment this appeal was taken.

The facts shown by the pleadings are as follows: On February 20th, 1928, defendant issued the policy in question upon the life of deceased. Said policy contained, among other matters, the following provisions, which are the only ones necessary for us to consider in determining this appeal:

"In consideration of the payment of one hundred and thirty-eight dollars, the receipt of which is hereby acknowledged, and of the payment of a like sum on or before the 20th day of February, May, August and November in every year for five years from the date of this Policy or until the prior death of Mannierre E. Young . . . the Northwestern Mutual Life Insurance Company . . . promises to pay . . . the sum of Thirty Thousand Dollars, *less any unpaid premium or premiums to the end of the current policy year* to his wife Josephine S. A. Young . . . This policy is issued by the Company and accepted by the parties in interest subject to the provisions stated on the consecutively numbered pages hereof which are hereby made a part of this contract. . . . The Insurance under this policy is based upon annual premiums, but payment may be made in semi-annual or quarterly installments at the published rates now in use by the Company. Change may be made upon any anniversary of the date hereof.

*Upon default in the payment of any premium this Policy shall cease and determine except as hereinafter provided.* Grace of 31 days, during which time the insurance will remain in full force, shall be allowed for the payment of every premium except the first. . . . " (Italics ours.)

Deceased paid defendant the sum of $138 on the twentieth day of February, 1928, and the same amount on the twentieth day of May of that year, but made no other or further payments. He died on the thirtieth day of October at Las Vegas, New Mexico.

It is the contention of plaintiff that under the terms of this policy and the facts, as above set forth, the payment by deceased of the first installment of $138, on February 20th, placed the policy in force for the full term of one year from the date of such payment even though deceased made no further payments thereon during that period, and that the only right of defendant, in case deceased died within the year without further payments, was to deduct from the face of the policy the balance of the premium due for the first year.

It is the position of defendant, on the other hand, that the policy lapsed automatically thirty-one days after the failure of deceased to pay any of the installments due on the twentieth days of February, May, August and November.

In support of her contention plaintiff states some twelve general propositions of law, to most of which no exception can be taken. It is doubtless true that both parties are bound by the terms of the contract, and that the courts in interpreting it can neither add to nor take anything away from it; that the policy must comply with the laws of Arizona, and that any ambiguity therein is to be construed against the insurer, and that a policy will not be considered forfeited for nonpayment of premium, or otherwise,

unless a reasonable construction of its terms so provides. There is no doubt that all these are true as abstract propositions of law, and defendant so admits, but insists that the terms of the policy in question show clearly, when interpreted in accordance with these very propositions, that it has automatically lapsed long before the death of the insured.

The first specific point made by defendant is that under the provisions of paragraph 3453, Revised Statutes of Arizona of 1913, which was in force when the policy was issued, it was necessary that all premiums after the first should be·payable in advance. This is undoubtedly the law, but we see nothing in the policy or the facts as above set· forth indicating any breach of this statute. The statute does not provide that all premiums must be annual ones or paid annually. We think its intent and purpose is to prevent the very contingency which plaintiff insists exists; that is, that the insured may be protected by insurance for which he had not paid.

We think the principle applicable to the policy in question is well laid down by the Supreme Court of the United States in the cases of *New York Life Ins. Co.* v. *Statham,* 93 U. S. 24, 23 L. Ed. 789, and *Klein* v. *New York Life Ins. Co.,* 104 U. S. 88, 26 L. Ed. 662.

In the first-mentioned case the court said as follows:

"The non-payment of the premiums in arrear was set up in bar of the actions; and the plaintiffs respectively relied on the existence of the war as an excuse, offering to deduct the premiums in arrear from the amounts of the policies. . . .

"We agree with the court below, that the contract is not an assurance for a single year, with a privilege of renewal from year to year by paying the annual premium, but that it is an entire contract of assurance for life, subject to discontinuance and forfeiture

for non-payment of any of the stipulated premiums. Such is the form of the contract, and such is its character. . . .

"But whilst this is true, it must be conceded that promptness of payment is essential in the business of life insurance. All the calculations of the insurance company are based on the hypothesis of prompt payments. They not only calculate on the receipt of the premiums when due, but on compounding interest upon them. It is on this basis that they are enabled to offer assurance at the favorable rates they do. Forfeiture for non-payment is a necessary means of protecting themselves from embarrassment. Unless it were enforceable, the business would be thrown into utter confusion. It is like the forfeiture of shares in mining enterprises, and all other hazardous undertakings. There must be power to cut off unprofitable members, or the success of the whole scheme is endangered. The insured parties are associates in a great scheme. This associated relation exists whether the company be a mutual one or not. Each is interested in the engagements of all; for out of the coexistence of many risks arises the law of average, which underlies the whole business. An essential feature of this scheme is the mathematical calculations referred to, on which the premiums and amounts assured are based. And these calculations, again, are based on the assumption of average mortality, and of prompt payments and compound interest thereon. Delinquency cannot be tolerated nor redeemed, except at the option of the company. This has always been the understanding and the practice in this department of business. Some companies, it is true, accord a grace of thirty days, or other fixed period, within which the premium in arrear may be paid, on certain conditions of continued good health, etc. But this is a matter of stipulation, or of discretion, on the part of the particular company. When no stipulation exists, it is the general understanding that time is material, and that the forfeiture is absolute if the premium be not paid. The extraordinary and even desperate efforts sometimes made, when an insured person is in *in extremis,* to meet a

premium coming due, demonstrates the common view of this matter.

"The case, therefore, is one in which time is material and of the essence of the contract. Non-payment at the day involves absolute forfeiture, if such be the terms of the contract, as is the case here. Courts cannot with safety vary the stipulation of the parties by introducing equities for the relief of the insured against their own negligence. . . . "

In the second case cited the premium was based on an annual figure, as in the policy in the present case, but was to be paid in semi-annual installments. The first semi-annual installment was paid in a certain policy year, but the second was due and unpaid at the death of the insured. It was urged, as here, that the unpaid installment should be deducted from the face of the policy. The court stated as follows:

"A life insurance policy usually stipulates, first, for the payment of premiums; second, for their payment on a day certain; and, third, for the forfeiture of the policy in default of punctual payment. Such are the provisions of the policy which is the basis of this suit.

"Each of these provisions stands on precisely the same footing. If the payment of the premiums, and their payment on the day they fall due, are of the essence of the contract, so is the stipulation for the release of the company from liability in default of punctual payment. No compensation can be made a life insurance company for the general want of punctuality among its patrons. . . .

"If the assured can neglect payment at maturity and yet suffer no loss or forfeiture, premiums will not be punctually paid. The companies must have some efficient means of enforcing punctuality. Hence their contracts usually provide for the forfeiture of the policy upon default of prompt payment of the premiums. If they are not allowed to enforce this forfeiture they are deprived of the means which they have reserved by their contract of compelling the parties insured to meet their engagements. The provi-

sion, therefore, for the release of the company from liability on a failure of the insured to pay the premiums when due is of the very essence and substance of the contract of life insurance. To hold the company to its promise to pay the insurance, notwithstanding the default of the insured in making punctual payment of the premiums, is to destroy the very substance of the contract. This a court of equity cannot do. *Wheeler* v. *Ins. Co.*, 82 N. Y. 543 [37 Am. Rep. 594]. See also the opinion of Judge GHOLSON in *Robert* v. *Ins. Co.*, 1 Disney (Ohio) 355.

"It might as well undertake to release the insured from the payment of premiums altogether as to relieve him from forfeiture of his policy in default of punctual payment. The company is as much entitled to the benefit of one stipulation as the other, because both are necessary to enable it to keep its own obligations.

"In a contract of life insurance the insurer and insured both take risks. The insurance company is bound to pay the entire insurance money, even though the party whose life is insured dies the day after the execution of the policy, and after the payment of but a single premium.

"The assured assumes the risk of paying premiums during the life on which the insurance is taken, even though their aggregate amount should exceed the insurance money. The assured also takes the risk of the forfeiture of his policy if the premiums are not paid on the day they fall due. . . . "

These cases have been cited repeatedly and almost invariably followed.

Counsel for plaintiff apparently relies almost entirely upon four cases: *Bolton* v. *Standard Life Ins. Co.*, 219 Ill. App. 177; *Southland Life Ins. Co.* v. *Hopkins*, (Tex. Civ. App.) 219 S. W. 254; *Friend* v. *Southern States Life Ins. Co.*, 58 Okl. 448, L. R. A. 1917B 208, 160 Pac. 457; *Haas* v. *Mutual Life Ins. Co. of New York*, 84 Neb. 682, 19 Ann. Cas. 58, 26 L. R. A. (N. S.) 747, 121 N. W. 996. On examining these cases, however, it will be found that in none of

the policies was there a provision expressly setting up that upon default of the payment of any premium the policy should cease and determine, a situation very different from that in the policy in the present case.

Much is made by plaintiff of the provision in the present policy to the effect that in case of the death of the insured before the payment of all the installments due in any premium year, the unpaid installments shall be deducted from the face of the policy. We think the true meaning of this provision is well set forth in the case of *Thompson* v. *Fidelity Mut. Life Ins. Co.,* 116 Tenn. 557, 115 Am. St. Rep. 823, 6 L. R. A. (N. S.) 1039, 92 S. W. 1098:

"The privilege of paying the annual premium in quarterly installments was evidently for the convenience of the insured. Ordinarily, these premiums are payable as a whole in advance for the term of one year. The failure to pay the whole of the premium in such a case works a forfeiture in the event that it is so provided. In this instance the result is the same, upon the failure of the insured to meet his quarterly payments when due. At the end of any quarter there is no obligation imposed upon the insured to pay the next succeeding quarter; his failure to pay works a forfeiture of his contract, but the company cannot compel him to pay the remaining installments. In the event of the death of the insured, before the end of the first quarter, or any succeeding quarter, if he has paid his premiums when due, his representatives are entitled to collect his insurance. In the absence of any provision permitting the company to deduct from the face value the remaining installments for the year, the insured would receive the face value of the policy, having paid one-fourth, two fourths, etc., as the case may be of the annual premium. In order to avoid this, the company said to the insured, 'You pay your premium in installments; if you meet those installments regularly when due and die before all of the installments have become due, we will pay the face value of the policy,'

'less any unpaid portion of the yearly payments.' In other words, the company reserves the right to deduct the dues for the current year accruing but not due. Thus, in the event of a loss, while the contract is in force, to preserve to itself the right to collect the unpaid portion of the annual premium. In the case of a default in the payment of any installment when due, the policy is no longer an existing contract, and the insurer has no right to collect the remaining installments."

See, also, *McConnell* v. *Provident Savings Life Assur. Soc.,* (C. C. A.) 92 Fed. 769, *Insurance Co.* v. *Sheridan,* 8 H. L. Cas. 745, and *Howard* v. *Continental Ins. Co.,* 48 Cal. 229.

We are of the opinion, both upon reason and authority, that where, as in the present case, the policy provides that it shall automatically lapse for the failure to pay the premium when due, and that when, although the premium is calculated on an annual basis, for the convenience of the insured the insurer has allowed the former to pay it in installments, the failure to pay any of the installments when due has the effect of lapsing the policy.

The judgment of the superior court of Pima county is affirmed.

McALISTER, C. J., and ROSS, J., concur.