502 P.2d 1077

Guadalupe GUERRERO, Appellant,

v.

Juanita GUERRERO, a widow, and Juanita Guerrero, as Administratrix of the Estate of Jesus Q. Guerrero, Deceased, Appellee.

No. 2 CA–CIV 1205.

Court of Appeals of Arizona, Division 2.

Nov. 16, 1972.

Rehearing Denied Dec. 20, 1972.

Review Denied Jan. 9, 1973.

Murphy, Vinson & Hazlett by Carl E. Hazlett, Tucson, for appellant.

Richard J. Riley, by Nancy A. Anderson, Bisbee, for appellee.

HOWARD, Judge.

This case involves the surviving spouse's entitlement to the benefits of a life insurance policy.

We first note that the policy in question is a term group life insurance policy and is the same master policy which was involved in the case of Gaethje v. Gaethje, 8 Ariz. App. 47, 442 P.2d 870 (1968).

After a trial to the court sitting without a jury, the following findings of fact and conclusions of law were made by the trial court:

"1. That the plaintiff is the widow of Jesus Q. Guerrero;

2. That during his lifetime the said Jesus Q. Guerrero, without the knowledge or consent of the plaintiff, changed the beneficiary of his Equitable Life Assurance Society Group Life Certificate No. 4162–CQ–A–363 from the plaintiff to the defendant;

3. The plaintiff did not receive at the death of her husband, Jesus Q. Guerrero, at least as much in value as one-half of all the community and other jointly acquired property (including therein the proceeds of the life insurance policy here in question); and

4. That the change of beneficiary from the plaintiff to the defendant was a constructive fraud upon the plaintiff by her husband, Jesus Q. Guerrero.

NOW THEREFORE, it is ORDERED, ADJUDGED and DECREED that the plaintiff is awarded the entire proceeds of that certain Group Life Insurance Certificate No. 4162–CQ–A–363 in the amount of $6,000.00 issued by Equitable Life Assurance Society of the United States to the decedent, Jesus Q. Guerrero."

The record shows that appellee Juanita Guerrero, the plaintiff below, and the decedent were married on March 5, 1944 and were husband and wife at the time of Jesus Guerrero's death, April 10, 1965. During his lifetime, Jesus Guerrero was employed by Phelps-Dodge Corporation in Bisbee as a miner. One of the fringe benefits of his employment was a group life insurance policy with Equitable Life Assurance Society under which he became insured on December 31, 1947. During Jesus Guerrero's employment by Phelps-Dodge Corporation, the premiums on the life insurance policy were paid from community funds of Juanita and Jesus Guerrero by deductions from the latter's wages.

On December 17, 1960, Jesus Guerrero suffered a stroke and could no longer work. The subject policy provided that an employee could elect to continue the policy in force after his employment terminated and he was no longer a member of the "Group". Jesus and Juanita Guerrero elected to continue the policy in force. Some of the premiums were paid by Phelps-Dodge Corporation, some from Juanita Guerrero's separate funds and some were paid from the husband's social security payments.

The Guerreros experienced domestic difficulties and Juanita Guerrero brought an action for divorce in the Cochise County Superior Court. On January 24, 1961, an order was entered in that action restraining Jesus Guerrero from changing the beneficiary of the life insurance policy. The divorce was never granted and the record is unclear as to the final disposition of the restraining order.

Jesus Guerrero spent the greater part of his remaining years living with his foster daughter in Naco, Arizona. Juanita Guerrero spent some of her time with her son in California and the rest of her time in Arizona. On or about June 21, 1961, Ramon Guerrero, Jesus' brother, who lived in Tucson, drove to Naco, picked up Jesus Guerrero and took him to the general office of Phelps-Dodge Corporation in Bisbee where Jesus changed the beneficiary of the insurance policy from Juanita, his wife, to Guadalupe, Ramon's daughter, who lived in Tucson. This change of beneficiary was accomplished without Juanita's knowledge or consent. It was not until Jesus Guerrero died on April 10, 1965, that Juanita Guerrero learned of the change of beneficiary and brought this suit to recover the proceeds of the policy. The transcript of the testimony of Juanita Guerrero reveals that Jesus Guerrero left upon death, a 1957 Chevrolet automobile which appellee sold for $25 and a house in Naco, Mexico which she testified had a value of $800.

Appellant contends that inasmuch as the insurance policy was purchased from decedent's sole and separate property, to-wit his social security disability benefits, it was his sole and separate property to do with as he pleased and that in any event, the appellant is entitled to one-half of the proceeds under the doctrine enunciated by this court in Gaethje v. Gaethje, supra.

## THE SOCIAL SECURITY DISABILITY PAYMENTS

Based upon Interal Revenue rulings and case law, which we consider entirely inapposite, appellant claims that the

sums of money received as benefits for disability under the Social Security Act were the decedent's sole and separate property. We do not agree. Subject to certain exceptions, all property acquired by either the husband or wife during the marriage is community property. A.R.S. § 25–211. The exceptions are property acquired by gift, devise or descent and earnings of the wife and her minor children while she is living separate and apart from her husband. There are no exceptions for the earnings of the husband while he is living separate and apart from his wife. Such earnings are still community property under A.R.S. § 25–211.

We note that the general purpose of the old age, survivor and disability insurance provisions of the Social Security Act is to protect workers and their dependents from the risk of loss of income due to the insured's old age, death or disability. Delno v. Celebrezze, 347 F.2d 159 (9th Cir. 1965). Entitlement to benefits is based upon the receipt of income from labor which the old age, death, or disability would interrupt. Delno v. Celebrezze, supra. Thus we see that the purpose of the payment of these disability benefits under the Social Security Act is to take the place of the income from labor which the husband otherwise would have been receiving. Under the law previously set forth, there is no doubt that had the husband not suffered from any disability but continued to work, his wages would still have been community property even though he was living separate and apart from his wife. Since his social security disability payments take the place of these wages, it is clear that such payments are community property.

## THE APPLICABILITY OF THE GAETHJE CASE

In Gaethje v. Gaethje, supra, we adopted the view that if the husband has made a testamentary disposition to the wife or there is other provision for her, either through will, joint tenancy, intestacy or trust instrument which brings to her upon

his death at least as much in value as one-half of all the community and other jointly acquired property (including therein the proceeds of the life insurance policy in question) then there has been no fraud upon her rights and the husband's designation of beneficiary would stand unaffected.

We further held that to the extent that the wife does not receive her share, there would be a constructive fraud upon her rights and such designation would be ineffective to the extent of such constructive fraud. In the Gaethje case, inasmuch as the record left unclear whether the designation wrongfully deprived the wife of her moiety, the summary judgment was set aside.

Relying on the Gaethje case, appellant now claims entitlement to at least one-half of the insurance proceeds. Appellant overlooks, however, that in the case at bench there is a complication which we took note of in Gaethje when we said:

"There are occasions when a surviving spouse is entitled as a matter of law to a portion or all of the deceased's one half of community estate, despite testamentary disposition. See, e. g., A.R.S. §§ 14–501, 14–514 and 14–517. Complications arising from these homestead, surviving spouse and family allowance statutes are not presented here and we leave their affect [sic] upon the doctrine herein announced to the time when they may be '* * * met with on the highway of adjudication.' . . . " 8 Ariz.App. at 51, 442 P.2d at 874.

A.R.S. § 14–517, prior to its amendment in 1968, provided in part as follows:

"A. If upon return of the inventory it appears that the value of the whole estate, exclusive of the amount of liens and the one-half interest of the surviving spouse in the community property, does not exceed three thousand five hundred dollars, and if there is a surviving spouse or minor children of decedent, the court shall, by order, require all persons interested to appear on a day fixed to show cause why the whole of the estate

should not be assigned for the use and support of the family of the decedent.

\* \* \* \* \* \*

C. If, upon the hearing the court finds that such value does not exceed three thousand five hundred dollars, and that expenses of the last illness of decedent, funeral expenses and expenses of administration have been paid, the court shall by decree assign to the surviving spouse, . . . the whole of the estate, subject to existing mortgages, liens or encumbrances upon the estate at the time of the death of decedent. Title to the estate shall thereupon vest absolutely in the surviving spouse . . . and there shall be no further proceedings in the administration, unless further estate is discovered."

\* \* \* \* \* \*

■ Under A.R.S. § 14–517, setting aside the estate to the surviving spouse is mandatory if all requirements of the statute are met. Johnson v. Jones, 55 Ariz. 49, 97 P.2d 933 (1940); Molina v. Ramirez, 15 Ariz. 249, 138 P. 17 (1914).

The purpose of A.R.S. § 14–517, if its prerequisites are satisfied, is twofold: First, to give to a surviving spouse or minor children of the decedent an absolute vested right in the estate property despite its character and despite the disposition made by the deceased spouse. Secondly, probate proceedings can be terminated in short order. We would be subverting the first purpose of this statute were we to allow a spouse to change the beneficiary on the insurance policy without the other spouse's consent and thereby deprive the surviving spouse of the benefit of this "nest egg" to which she is entitled.

■ If we consider the insurance proceeds as funds subject to the decedent's testamentary disposition, it is clear that the estate would not have exceeded $3,500 exclusive of the amount of liens and the one-half interest of the surviving spouse in the community property. The actions of the husband in changing the beneficiary without the consent of the wife worked as

a constructive fraud not only as to the wife's moiety, but also as to the remainder of the proceeds.

Affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.