[Civ. No. 45169. Second Dist., Div. One. May 30, 1975.]

NEW YORK LIFE INSURANCE COMPANY,
Plaintiff and Cross-defendant, v.
KIMBERLY CAWTHORNE, a Minor, etc.,
Defendant, Cross-defendant and Respondent;
WILLIE T. CAWTHORNE,
Defendant, Cross-complainant and Appellant.

**COUNSEL**

Sweeney, Cozy & Diederich and Daniel B. Diederich for Defendant, Cross-complainant and Appellant.

George Yamasaki, Jr., and Kenneth Paul Klaiman for Defendant, Cross-defendant and Respondent.

No appearance for Plaintiff and Cross-defendant.

**OPINION**

**THOMPSON, J.**—This appeal involves the narrow issue of the distribution of the proceeds of a life insurance policy purchased with community funds where one spouse has killed the other in circumstances rendering the slayer guilty of voluntary manslaughter. We conclude that the named beneficiary of the policy is not entitled to be paid the slayer's community interest in it. The slayer, having defaulted in the action at bench but her daughter and heir-at-law having appeared, the daughter is entitled to one-half of the proceeds of the insurance and the named beneficiary to the other one-half.

The case at bench reaches us on an appeal from a judgment in interpleader given on stipulated facts. On August 15, 1966, New York Life Insurance Company issued a life insurance policy in the face amount of $12,771, insuring the life of Billy M. Cawthorne with double indemnity payable in the event of accidental death. At the time the policy was issued, Billy Cawthorne was married to Dorothy Cawthorne. They had one child, a daughter Kimberly. Dorothy was designated as primary beneficiary of the policy, the premiums of which were paid with community funds of Billy and Dorothy.

On April 13, 1968, Billy Cawthorne designated his brother William T. Cawthorne as primary beneficiary in lieu of Dorothy. On May 5, 1968, Dorothy killed Billy. She was subsequently convicted of voluntary manslaughter. New York Life paid one-half of the proceeds of the life insurance policy to decedent's brother William T. Cawthorne. Dorothy made no claim upon the remaining one-half of the proceeds by reason of her community interest in the policy. Kimberly, the daughter of Dorothy and decedent, and William, the designated beneficiary of the policy, each claimed the sum representing the remaining one-half.

Acting on a complaint in interpleader filed by New York Life, to which Dorothy did not file an answer, and the stipulation of facts, the trial court concluded that the decedent was not empowered to designate the beneficiary of Dorothy's community interest in the policy, that Dorothy was barred from taking the proceeds because she had killed the insured under circumstances constituting voluntary manslaughter, and that Kimberly, as the daughter and heir-at-law of the decedent and Dorothy, should take the remaining one-half of the proceeds of the insurance policy. This appeal by William, the beneficiary designated in the policy, followed.

Probate Code section 258 [1] and Civil Code sections 2224[2] and 3517[3]

[1]"No person who has unlawfully and intentionally caused the death of a decedent . . . shall be entitled to succeed to any portion of the estate or to take under any will of the decedent; but the portion thereof to which he would otherwise be entitled to succeed goes to the other persons entitled thereto under the provisions of this chapter or under the will of the decedent. A conviction or acquittal on a charge of murder or voluntary manslaughter shall be a conclusive determination of the unlawfulness or lawfulness of a causing of death, for the purposes of this section."

[2]"One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

[3]"No one can take advantage of his own wrong."

declare a California public policy barring one who has deliberately and without justification killed another from profiting from the killing whether the profit be in the form of inheritance or bequest (Prob. Code, § 258), the proceeds of insurance on the life of the deceased (*Beck* v. *West Coast Life Ins. Co.,* 38 Cal.2d 643 [241 P.2d 544, 26 A.L.R.2d 979]), or survivorship in joint tenancy (*Johansen* v. *Pelton,* 8 Cal.App.3d 625 [87 Cal.Rptr. 784]).

Application of that public policy is relatively simple in situations where the slayer had no vested interest in the property of the deceased prior to the killing. The slayer being barred from taking, Probate Code section 258 controls succession by intestacy or taking by the deceased's will in a fashion which excludes the slayer from the line of succession and as a beneficiary of the will. The slayer is not permitted the benefit of the contract right as a beneficiary of a life insurance policy because of the controlling public policy. (*Beck* v. *West Coast Life Ins. Co., supra,* 38 Cal.2d 643, 646.)

Application of the policy is much more difficult where the rights claimed by the slayer are based upon an interest vested in him prior to the killing. Rights to property fully vested in title, possession and control in the slayer prior to the killing are not forfeited by the killing. (Pen. Code, § 2604; *Prudential Ins. Co. of America* v. *Harrison* (S.D.Cal. 1952) 106 F.Supp. 419, 425.) Where, however, the act of killing accelerates possession and possibly title, as for example where one joint tenant kills another or a beneficiary of insurance who also owns the property rights in the policy kills the insured, there is a difficult question of the extent to which the slayer has profited from his act. While his title was vested prior to the killing, the slaying enhances the slayer's rights. The governing policy indicates that the slayer should not profit from that enhancement.

Decisional law is by no means uniform in its approach to the problem. In *Prudential Ins. Co. of America* v. *Harrison,* (S.D.Cal. 1952) *supra,* 106 F.Supp. 419, the federal district court concluded that the beneficiary of a life insurance policy who owned a community property interest in it was entitled to one-half of the proceeds of the insurance upon slaying the insured because of his vested community property interest in the policy. In *Manufacturers Life Ins. Co.* v. *Moore* (S.D.Cal. 1953) 116 F.Supp. 171, the same federal district court held under identical circumstances that the slayer-beneficiary was entitled only to one-half of the cash surrender value of the policy at the time of the insured's death with the remaining proceeds of insurance going to alternate beneficiaries named in the

policy. (See also discussion in *Beck* v. *West Coast Life Ins. Co., supra,* 38 Cal.2d 643, 646.)

The one California case considering an analogous situation takes a different approach to accommodate the conflicting rule against forfeitures and policy against profiting from a wrong. In *Johansen* v. *Pelton,* 8 Cal.App.3d 625 [87 Cal.Rptr. 784], the court dealt with conflicting claims of heirs of a husband and wife to joint tenancy property where the husband killed the wife and immediately thereafter committed suicide. Its solution was "to impress a constructive trust on one-half of the [former joint tenancy] property held by the . . . slayer [as surviving joint tenant] . . . in favor of the heirs or devisees, other than the slayer, of the slain joint tenant." (8 Cal.App.3d at p. 630.) The court thus declined to forfeit the ". . . slayer's preslaying inchoate right to one-half [of] the property . . . ." (8 Cal.App.3d at p. 635.)

*Johansen* establishes the principle that vested property rights, although partially inchoate, are not affected by action of the owner of those rights causing them to accelerate in possession by slaying another. ■ In the case at bench, Dorothy Cawthorne had a vested interest in one-half of the insurance policy upon the life of her husband because the policy had been acquired with community funds. Billy Cawthorne, the husband, had no power to direct the manner in which the life insurer would pay the proceeds of the policy representing the wife's community interest in it. (*Tyre* v. *Aetna Life Ins. Co.,* 54 Cal.2d 399, 404 [6 Cal.Rptr. 13, 353 P.2d 725].) The rule of *Johansen* requires that the wife's one-half vested interest in the life insurance policy not be forfeited because she accelerated the payment of the proceeds by killing her husband.[4]

We do not reach the next and obvious issue of the right of Dorothy Cawthorne to the proceeds of her community one-half interest in the policy as against respondent, her daughter and heir-at-law. Just as the issue was not squarely before the court in *Johansen* because the slayer-husband had committed suicide after killing his wife and co-joint

---

[4]The rule of *Beck* v. *West Coast Life Ins. Co., supra,* 38 Cal.2d 643, upon which appellant relies almost exclusively, is inapplicable to the case at bench. *Beck* deals with conflicting claims to the proceeds of insurance of an alternate beneficiary and the estate of the insured where the primary beneficiary killed the insured. Reaching a result unaffected by any issue of community property, our Supreme Court held that the alternate beneficiary was entitled to the proceeds because the designation of beneficiaries was ". . . testamentary in character . . ." and ". . . should be given effect . . . ." (38 Cal.2d at pp. 646-647.) In the case at bench, Billy Cawthorne had no power of testamentary disposition over Dorothy Cawthorne's community one-half interest in the insurance proceeds.

tenant, it is not before us here because, while Dorothy Cawthorne was named as a party in the interpleader action, she defaulted. The only party to the action whose claim might conceivably conflict with respondent's has waived her rights to the fund by not answering the complaint and the judgment in respondent's favor must stand.

.The judgment is affirmed. Respondent to recover costs from appellant.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied June 25, 1975, and appellant's petition for a hearing by the Supreme Court was denied July 23, 1975.