563 P.2d 302

**Richard Wayne NEELY, Appellant/Cross Appellee,**

v.

**Sue NEELY, Appellee/Cross Appellant.**

**No. 2 CA–CIV 2123.**

Court of Appeals of Arizona, Division 2.

Jan. 14, 1977.

Rehearing Denied Feb. 28, 1977.

Review Denied April 5, 1977.

**49**

Donald C. Premeau, Globe, for appellant/cross appellee.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Richard E. Mitchell, Phoenix, for appellee/cross appellant.

### OPINION

HOWARD, Chief Judge.

This is an appeal from an amended dissolution decree directing, inter alia, payment of alimony and child support, dividing community property and ordering appellant-husband to pay community obligations and attorneys' fees.

The parties were married in Coolidge, Arizona, on February 9, 1952, and have four children, ages 19, 17, 14 and 7. At the time of the trial the two eldest children were emancipated. The appellee/cross appellant was a full-time housewife and the appellant a full-time self-employed farmer.

It is appellant's contention that the lower court abused its discretion in distributing the community property of the parties. Numerous allegations of error have been propounded in support of this position. Appellee, on the other hand, argues that no abuse of discretion is manifest except in the trial court's award of certain insurance policies which she believes are her sole and separate property. We find that neither contention has merit and affirm.

Appellant asserts that although his award amounted to $711,280.94, he was ordered to pay debts and obligations of $635,494.49,[1] leaving an equity distribution of $75,786.45. This sum, it is claimed, is dis-

proportionately small when contrasted with appellee's award of $219,831.37. Appellee, however, has disputed certain computations of her husband and claims that her one-half interest in the net assets coupled with credits amounts to $239,367.22 and the award actually made by the trial court was therefore proper.

We start with the premise that apportionment of community property rests within the sound discretion of the court. *Nace v. Nace*, 104 Ariz. 20, 448 P.2d 76 (1968). The discretionary power is very broad and will not be disturbed unless it clearly appears that it has been abused. *Hatch v. Hatch*, 23 Ariz.App. 487, 534 P.2d 295 (1975).

Standards for property distribution pursuant to a dissolution judgment are set forth in A.R.S. § 25–318 (Supp.1973), which provides in part:

"In a proceeding for dissolution of the marriage, or for legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which previously lacked personal jurisdiction over the absent spouse or previously lacked jurisdiction to dispose of the property, the court shall assign each spouse's sole and separate property to him. It shall also divide the community, joint tenancy, and other property held in common equitably . . . ."

The touchstone of proper apportionment is whether a directed distribution is equitable in nature. The trial court is not required to divide the property evenly. *McClennen v. McClennen*, 11 Ariz.App. 395, 464 P.2d 982 (1970). Other criteria may be considered in addition to the mathematical computations submitted by the parties involved. Age, financial condition, health, opportunities and previous standard of living are all factors to be evaluated by the court below. See, *Wick v. Wick*, 107 Ariz. 382, 489 P.2d 19 (1971); *Spector v. Spector, supra.*

---

1. It is not inequitable per se for a trial court to order one party to assume the community obligations. Once having considered liabilities, it is within the power of a court to allocate pay-

ment of debts to one or both parties. *Spector v. Spector*, 17 Ariz.App. 221, 496 P.2d 864 (1972).

■ Further, A.R.S. § 25–318 explicitly allows the court to consider excessive or abnormal expenditures as well as destruction, concealment or fraudulent disposition of community property.

■ Our review of the record reveals there was evidence from which the trial court could have concluded that the community assets had a total value of $808,134.54. From these appellee received assets, free and clear of encumbrances, of a total value of $65,535. According to appellant, he was ordered to pay community debts and obligations in the sum of $484,099.49.[2] But there was also other evidence from which the court could have concluded that in computing the amount of the community obligations this figure should be $452,905.42.[3] We thus arrive at the following computations:

| ITEM | | AMOUNT |
|---|---|---|
| Value of Community Property | $808,134.54 | |
| Less: Amount awarded to wife | −65,535.00 | $742,599.54 |
| Less: Community Debts | | −452,905.42 |
| Total Value received by Husband | | $289,694.12 |

| ADJUSTMENT TO EQUALIZE | | |
|---|---|---|
| ITEM | | AMOUNT |
| Value received by wife | $ 65,535.00 | |
| Value received by husband | 289,694.12 | |
| | $355,229.12 | |
| Less ½ | 177,614.56 | $177,614.56 |
| Less value received by wife | | −65,535.00 |
| Amount Needed to Equalize: | | $112,079.56 |

The trial court gave the wife a note from the husband in the sum of $140,000 which, rounded off, is $27,921 more than would appear necessary to equalize the shares of community assets. However, the record also shows the wife should receive credit for community property which was used to enhance the separate estate of the husband and for the development of a crop from which the wife will derive no benefits. This totals $28,000. There was further testimony that the husband spent $1,200 to $1,300 worth of the community property on his girlfriend and that community property

in the sum of $35,000 had been concealed by the husband. We would then arrive at the following:

| CREDITS TO WIFE | | |
|---|---|---|
| ITEM | | AMOUNT |
| Future crop expenditures | $28,000.00 | |
| Spent on girlfriend | 1,200.00 | |
| Concealed receipts | 35,000.00 | |
| | $64,200.00 | |
| Less ½ Community | −32,100.00 | |
| | | $32,100.00 |
| Difference Between Necessary Adjustments and Note Given to Wife | | −27,921.00 |
| TOTAL | | $ 4,179.00 |

We thus see from the above computation that the trial court could have required the husband to give the wife a note for $144,179. We therefore conclude that there was no disparity in the division of the property, nor any abuse of discretion on the part of the trial court in ordering the husband to pay appellee's attorneys' fees and court costs in the sum of $11,406.

The second question presented for our determination concerns the validity of the trial court's distribution of the parties' insurance policies. It is the wife's contention that the lower court abused its discretion and distributed the policies contrary to law since they were her sole and separate property. She argues that when one spouse has turned over ownership of an insurance policy to another spouse in order to avoid estate taxes it is conclusive and incontrovertible that a gift has been created. We disagree.

In its initial decree the trial court awarded appellee/cross appellant those insurance policies in which she was listed as owner. All other policies went to her husband. However, in its amended decree, the court revised its previous decision and took certain policies "owned" by Marie Sue Neely and awarded them to appellant. In turn, a policy "owned" by Richard Neely was awarded to appellee. The court, in its judgment, stated that the insurance policies were a part of the community assets of the parties.

---

2. This figure does not include appellee's attorneys' fees and court costs which appellant was ordered to pay.

3. For example, the court could have concluded that the husband was solely responsible for the income tax penalties.

■ In Arizona, property acquired during marriage is presumed to be community property.[4] *Armer v. Armer*, 105 Ariz. 284, 463 P.2d 818 (1970); *Porter v. Porter*, 101 Ariz. 131, 416 P.2d 564 (1966). This presumption may be rebutted, however, by clear and convincing evidence. *Kennedy v. Kennedy*, 93 Ariz. 252, 379 P.2d 966 (1963). One method of rebuttal is to introduce substantial evidence that a party has made a gift of his interest in the community property. *Freedman v. United States*, 382 F.2d 742 (5th Cir. 1967). Where the intent of the parties is clear, effect will be given to that intent. *Lincoln Fire Insurance Co. v. Barnes*, 53 Ariz. 264, 88 P.2d 533 (1939). Therefore, in the case sub judice, we must ascertain whether a gift was in fact made.

■ Although Richard Neely testified that his intention in designating his wife as owner of the policies was to allow the insurance proceeds to bypass his estate in avoidance of estate taxes, it is apparent that he was unaware that changing ownership could effectively result in a gift to appellee. Evidence exists from which the trial court could have found that Mr. Neely did not intend to divest himself of his community interest in said policies. Indeed, appellant stated at one point that it was his wish to keep the policies on the children to insure their security should something happen to him and to enable them to pay any taxes levied upon his estate. His wife was to have the two policies in which she was named as insured. At no time did either party file a federal gift tax return.

■ The essential elements of a gift inter vivos are "that the donor manifest a *clear intent* to give to the party claiming as donee and give to the latter before death full possession and control of the property (emphasis ours)." *O'Hair v. O'Hair*, 109 Ariz. 236, 508 P.2d 66 (1973). In short, there must be donative intent, delivery and a vesting of irrevocable title upon such delivery. *Armer v. Armer*, supra.

■ We do not believe that the mere form of a life insurance policy is conclusive on either the issue of ownership or whether a gift has been made. Rather, donative intent must be ascertained in light of all surrounding circumstances. This is evident from an analysis of cases in other areas. In *Bourne v. Lord*, 19 Ariz.App. 228, 506 P.2d 268 (1973), this court held that recitals in a deed are merely prima facie evidence of ownership and did not preclude the trial court from determining the true status of the property. Again, in *O'Hair v. O'Hair*, supra, our Supreme Court stated that the form of a bank account is not regarded as sufficient to establish the intent of the depositor to give another a joint interest in or ownership of the deposit. It is the intention of the depositor which must be deemed controlling. *McNabb v. Fisher*, 38 Ariz. 288, 299 P. 679 (1931).

Applying these principles to the instant matter, it is obvious that the trial court had the power to determine the status of the property. That Mrs. Neely was listed as owner is a fact to be considered, but is certainly not determinative. Appellant's statements concerning his wishes to bypass estate taxes and his statements pertaining to his own beliefs as to the status of the property are at odds. Evidently, the trial court believed that the clear intent necessary for the completion of a valid inter vivos gift was lacking. We cannot say that the trial court erred.

In *Commissioner of Internal Revenue v. Fleming*, 155 F.2d 204 (5th Cir. 1946), the Fifth Circuit Court of Appeals was confronted with a factual situation similar to the one before us. The life insurance policies were purchased by a Texas husband and wife in the name of the wife with community funds, but the wife had sole rights to exercise the incidents of ownership. The Tax Court had found that the taxpayer's chief reason in causing the policies upon his wife's life to be written was his understanding that the proceeds to be

---

4. Evidence was introduced that the policies in question were purchased after the date of marriage.

**52**

paid thereunder would be exempt from the federal estate tax. It was further found that the husband had given no thought to the powers granted the insured under the terms of the policies and had not intended by his actions to make a gift to his wife.

It was the Commissioner's position that the respondent's taking the insurance policies in the name of his wife, coupled with the rights granted to the named insured, created ipso facto a gift regardless of what might have been the donative intent of the husband at the time the policies were procured.

In rejecting this contention, the court stated:

"When we come to consider the strong presumption that property purchased with community funds remains community property, even though title be taken in the name of the wife alone, we do not think the mere fact that the policies contained provisions giving the insured broad powers, created a gift from the husband to the wife, as a matter of law. Manifestly, this is true where the husband gave no thought to the terms of the policies and did not intend at the time to make a gift to his wife." 155 F.2d at 206.

█ Finally, appellee has called our attention to *Catalano v. United States*, 429 F.2d 1058 (5th Cir. 1969), in support of the proposition that the policies are her sole and separate property. Again, we are not persuaded. There, in interpreting the law of Louisiana, the court found that in the jurisprudence of that state it was well-settled that life insurance policies on the life of the husband unconditionally owned by the wife or in which she was the irrevocable beneficiary were, as a matter of law, deemed part of her separate estate. Arizona has never subscribed to this doctrine and we are obviously not bound to follow the federal court's determination of a foreign state's law. In any event, *Catalano* is distinguishable on its facts from the case at bar. Here the party transferring the policies is still living and has provided the court below with extensive testimony indicating his intention whereas, *Catalano* involved an ac-

tion to recoup taxes paid by the decedent's estate.

Consideration of the foregoing leads us to conclude that the policies remained community property and that the trial court did not err in their distribution.

Affirmed.

HATHAWAY, J., and HENRY S. STEVENS, Retired Judge, concur.