718 P.2d 993

In the Matter of the ESTATE OF
Manuel Felipe ALARCON, Jr.

John HOWARD, Personal Representa-
tive of the Estate of Sandra Lee
Alarcon, Deceased, Appellant,

v.

Patricia MEJIA, Personal Representative
of the Estate of Manuel Felipe
Alarcon, Jr., Deceased, Appellee.

No. 2 CA–CIV 5006.

Court of Appeals of Arizona,
Division 2.

May 30, 1984.

As Corrected June 25, 1986.

Waterfall, Economidis, Caldwell & Hanshaw, P.C. by Carolyn J. Knoblock, Tucson, for appellant.

Linden, Chapa & Fields by Elaine J. Whelan, Tucson, for appellee.

## OPINION

BIRDSALL, Chief Judge.

This appeal arises from a controversy regarding the appropriate distribution of

certain life insurance proceeds between the estate of the insured, Manuel F. Alarcon, Jr., and the estate of his wife, Sandra L. Alarcon.

The pertinent facts follow. Manuel Alarcon and Sandra Alarcon were married in October 1978. In March 1979 American Republic Insurance Co., an Iowa corporation, issued a policy on the life of Manuel in the amount of $50,000. Sandra was the designated beneficiary with no alternate beneficiary being named by Manuel. The terms of the policy, however, provided that should the beneficiary predecease the insured, die simultaneously, or fail to survive the insured by 10 days, then the benefits would be paid to the "owner or the owner's estate". The insurance contract also provided that the "owner" of the policy was the insured. The policy was a term policy, having no cash surrender value, and it is undisputed that all monthly premiums were paid with community funds.

Thereafter, on November 18, 1982, Manuel Alarcon visited Sandra at the Palo Verde Hospital where she had been voluntarily admitted for treatment for "suicidal depression". At the time of that visit Manuel informed Sandra that he intended to seek a dissolution of their marriage. The following day,[1] November 19, Sandra left the hospital and purchased a .38-caliber revolver and ammunition. Later that afternoon Sandra went to her husband's place of employment and summoned her husband to meet her in the parking lot. When Manuel arrived, she shot him, got back in her car and drove away. Shortly thereafter, law enforcement officers pursued Sandra in a high-speed chase and during this pursuit Sandra shot herself. Sandra Alarcon died of the self-inflicted gunshot wound one-half hour before Manuel died as a result of the gunshot wounds inflicted on him earlier.

In April 1983 appellee, Patricia Mejia, personal representative of the estate of Manuel Alarcon, commenced an action in the superior court against appellant John Howard, personal representative of the estate of Sandra Alarcon, and against American Republic seeking a declaratory judgment to determine entitlement to the proceeds of the insurance policy insuring the life of Manuel Alarcon. Appellants filed a petition for allowance of claim against the appellee in April 1983 requesting the court to allow its claim to one-half the insurance proceeds. These two actions were subsequently joined and in June 1983 the court denied appellant's petition for allowance of claim and declared that the proceeds of the insurance policy on the life of Manuel Alarcon were to be distributed to the appellee, his estate. The trial court made no findings of fact or conclusions of law in support of its judgment. This appeal followed.

The thrust of appellant's argument is that the trial court erred in failing to recognize Sandra's estate's one-half share of the insurance proceeds when the policy was community property. We agree.

■ Initially, we point out that the insurance policy in question was clearly community property. A.R.S. § 25–211 defines community property as:

All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, is the community property of the husband and wife.

In the present case, all premiums were paid with community funds. The record contains no evidence and no allegation has been made that the insurance policy was acquired by Manuel Alarcon by gift, devise or descent. Our courts have uniformly upheld the principle set forth in the above statute that all property acquired during marriage is presumed to be community property, with each spouse possessing an undivided one-half interest. *Armer v. Armer*, 105 Ariz. 284, 463 P.2d 818 (1970); *Porter v. Porter*, 101 Ariz. 131, 416 P.2d 564 (1966).

With this fact established, the pivotal question presented by this appeal becomes:

---

1. There is a discrepancy in the record as to when this visit took place and when Sandra left the hospital, but it is undisputed that Sandra and Manuel both died on November 19, 1982.

What, if any, interest does Sandra Alarcon's estate have in the proceeds from the term life insurance policy which had no cash value until the death of the insured, Manuel? This question requires a three-step analysis:

1) Do the terms of the policy control the distribution of the policy proceeds?

2) If not, what was the nature of Sandra's interest in the term policy prior to the dissolution of the community caused by her death?

3) Did that interest survive in her estate until the subsequent death of Manuel entitling her estate to a one-half interest in the proceeds?

### Policy Terms

As to the first question, appellee argues that Arizona courts have supported the theory that an insurance policy is a contract and that the terms of the policy govern any action thereon, citing *Dairyland Mutual Insurance Company v. Andersen,* 102 Ariz. 515, 433 P.2d 963 (1967) and *D.M.A. F.B. Federal Credit Union v. Employers Mutual Liability Insurance Company of Wisconsin,* 96 Ariz. 399, 396 P.2d 20 (1964). Appellee therefore contends that we must strictly follow the terms of the policy. If we were to do this Sandra's estate would have no interest in the proceeds since she failed to survive Manuel by ten days.

It is well established, however, that an insurance policy is a contract, and that the parties to that contract may include any provisions which they may see fit, unless they are prohibited by statute or public policy. *Republic National Life Insurance Company v. Merkley,* 59 Ariz. 125, 124 P.2d 313 (1942); *Young v. Northwestern Mutual Life Insurance Company of Milwaukee, Wisconsin,* 40 Ariz. 340, 12 P.2d 285 (1932). We hold that our community property laws are controlling over insurance contract terms which are contrary to community property principles. *In Neely v. Neely,* 115 Ariz. 47, 563 P.2d 302 (App.1977), a case in which a dispute arose over whether the husband had made a gift

of an insurance policy to his wife, our court stated that the mere form of a life insurance policy (i.e., who was designated as "owner" in the policy) is conclusive neither on the issue of the ownership of the policy nor whether a gift had been made. Here we find a policy where Manuel is designated the "owner". Yet based on A.R.S. § 25–211 and Arizona case law, the "community" owned the policy despite the fact that there is no provision included in the policy to reflect Sandra's one-half community property interest.

While it is true that in Arizona the husband and wife have equal management, control and disposition rights over their community property, A.R.S. § 25–214(B), and either spouse may contract or bind the community, the actions of one spouse in so doing may not be in derogation of the other spouse's community property rights. *Gristy v. Hudgens,* 23 Ariz. 339, 203 P. 569 (1922); *Ellsworth v. Ellsworth,* 5 Ariz.App. 89, 423 P.2d 364 (1967). Thus, the designation of the "owner" of the policy as the insured is not necessarily controlling; other factors must be considered.

In *Gaethje v. Gaethje,* 8 Ariz.App. 47, 442 P.2d 870 (1968), our court reviewed the approaches used by the Washington, Texas and California courts in situations where community property funds are used to purchase an insurance policy and the insured spouse has designated someone other than his/her spouse as the beneficiary under the policy. In rejecting these various approaches, we stated that the rule set forth in Gristy v. Hudgens, *supra,* was controlling. Thus, in *Gaethje* where the deceased insured had designated his son by a previous marriage as beneficiary under the policy we said:

> We, accordingly, adopt the view that, if the husband in this case has made a testamentary disposition to the wife, or there is other provision for her, either through will, joint tenancy, intestacy or trust instrument which brings to her upon his death at least as much in value as one half of all of the community and

other jointly acquired property (including therein the proceeds of the life insurance policy here in question), then there has been no fraud upon her rights and the designation of beneficiary should stand effective. To the extent that she did not receive her share, there would be a constructive fraud upon her rights and the designation would be ineffective to the extent of such constructive fraud. 8 Ariz.App. at 52.

In the instant case, both parties died intestate and the record reveals that the insurance proceeds constituted the bulk of the community estate. The only community asset of significant value was the family residence valued at $29,000 with encumbrances of $28,358. Under *Gaethje, supra,* it is obvious that Sandra Alarcon's estate did not receive one-half of the community and jointly acquired property "through will, joint tenancy, intestacy or trust instrument."

■ Appellee argues that fraud becomes an issue only where the wife can prove that she did not consent to a change in the designation of a beneficiary, citing *Guerrero v. Guerrero,* 18 Ariz.App. 400, 502 P.2d 1077 (1972) and *Gaethje, supra.* Our reading of these cases reveals no such holding. Since it is the appellee who contends that the wife consented to the designation of the alternate beneficiary, we believe it is the burden of the appellee to prove such consent.

No evidence shows that Sandra consented to this designation. The terms of the policy were agreed to by Manuel alone who signed the policy application. Under Arizona law, Manuel had the authority to dispose of his one-half share of the insurance policy in any way he chose. However, by his agreement to the terms included in this particular policy, Manuel attempted to dispose of the proceeds of a community asset, purchased with community funds, in a fashion in derogation of Sandra's vested community property rights.

■ In further support of this contention appellee cites A.R.S. § 20–1128 which provides:

C. In any life or disability insurance policy issued upon the life of a spouse, the designation made by such spouse of a beneficiary in accordance with the terms of the policy shall create a presumption that the beneficiary was so designated with the consent of the other spouse, *but only as to any beneficiary who is the child, grandchild, parent, brother or sister of either of the spouses.* The insurer may in good faith rely upon the representations made by the insured as to the relationship to him of any such beneficiary. (emphasis supplied)

This statute is clearly inapplicable to the instant case. Manuel's separate estate does not fall within the group of beneficiaries entitled to rely on the presumption of consent.

### Nature of the Interest in the Policy

Since we have determined that under these circumstances the policy provisions are not controlling, we must now determine the nature of Sandra's interest in the term policy prior to the dissolution of the community caused by her death.

Various approaches have been used in community property states to resolve this question. For example, Texas at one time espoused the view set forth in *Warthan v. Haynes,* 288 S.W.2d 481 (1956):

... that the wife, the beneficiary in a policy insuring her husband, with the right reserved to the husband to change the beneficiary, has prior to the death of the insured no vested interest in the policy or in the proceeds of it, even though the policy is taken out during marriage and all premiums are paid out of community funds.... Id. at 483.

Thus, confronted with a fact situation almost identical to the one before us (except as to the manner in which the husband died), the court in *Warthan* awarded the entire proceeds to the estate of the husband. It should be noted that part of the rationale underlying this decision was based on a Texas statutory provision that the husband generally has the right of

control of community property and that control cannot be interfered with unless it is exercised in fraud of the rights of the wife. As we have previously stated Arizona does not have a similar statute; rather the husband and wife have *equal* control over the management of community property. A.R.S. § 25–214(B). In contracting for the community, the actions of one spouse may not be in derogation of the other spouse's community property rights. *Gristy v. Hudgens, supra; Ellsworth v. Ellsworth, supra.*

▇ The view set forth in the dissenting opinion in *Warthan* (and now accepted by the Texas courts) appears more persuasive to this court; that where the policy is purchased entirely with community property funds, the beneficiary spouse has a valuable property interest in that policy. This view has also been adopted by the California courts in applying community property principles to insurance policy proceeds. *See Tyre v. Aetna Life Insurance Company,* 54 Cal.2d 399, 6 Cal.Rptr. 13, 353 P.2d 725 (1960); In re *Castagnola's Estate,* 68 Cal.App. 732, 230 P. 188 (1924).

In reaching the conclusion that the beneficiary spouse has a valuable property interest, Justice Garwood reasoned as follows:

Of course, nobody has ever asserted that the actual dispute in the Womack case concerned anything except the cash surrender value, which is a name given to the insurer's matured obligation to pay, at a given time prior to maturity of the full insurance, a less sum than the full insurance. Admittedly, too, this matured obligation is not the same obligation as the one to pay the full insurance. But the present relevance of *Womack v. Womack* [141 Tex. 299, 172 S.W.2d 307 (1943) ] is this: if the stipulated cash value of the policy as of the stipulated date is *property,* why isn't the policy itself property? "Policy" means the contract between insurer and insured. *Both the promise of the insurer to pay the cash surrender value and the promise to pay the insurance itself are obli-*

*gations of the policy. To say that the matured "cash surrender" obligation is property, which it admittedly is, but that the contract out of which it arises is not property is quite illogical.* Where a particular interest installment of a promissory note has matured but the principal has not matured, surely we never say that the interest obligation is property but the note itself is not. And to say that the matured obligation is *community* property (and we properly still approve *Womack v. Womack* to this extent) but that the contract from which it arises is not community property, is equally illogical.... 288 S.W.2d at 488 (emphasis supplied)

Apparently, in response to the majority opinion set forth in *Warthan,* the Texas legislature passed emergency legislation to enlarge the statutory definition of property to include insurance policies. The present Texas view set forth in *Brown v. Lee,* 371 S.W.2d 694 (1963), in which this legislative change is discussed, is:

The legal theory of title to insurance proceeds heretofore followed by this Court and most recently reviewed in the majority opinion of Warthan v. Haynes, [citation omitted] appears to have been altered by a recent legislative amendment. A 1957 amendment to article 23(1), Vernon's Ann.Civ.Stats., enlarged the statutory definition of "property" so that it now includes "insurance policies and the effects thereof." The legislature has thus aligned Texas with other community property states in adhering to the theory that the right to receive insurance proceeds payable at a future but uncertain date is "property". Such property is said to be in the nature of a chose in action which matures at the death of the insured. 371 S.W.2d at 696.

In *Brown v. Lee,* the court was confronted with a simultaneous death situation, yet its discussion of the nature of the property right in the insurance policies involved is informative:

When purchased with community funds, the ownership of the unmatured chose logically belongs to the communi-

ty, unless it has been irrevocably given away under the terms of the policy, i.e., where the purchaser has, without fraud, foreclosed any right to change the named beneficiary as in *Evans v. Opperman,* 76 Tex. 293, 13 S.W. 312 (1890)....

Under circumstances where the uninsured spouse predeceases the insured spouse, settlement of the decedent's community interest in the unmatured chose has ordinarily been resolved by allocating one-half of the cash surrender value to the deceased's estate and the other one-half, plus ownership of the unmatured chose, to the surviving spouse. *Thompson v. Calvert,* 301 S.W.2d 496 (Tex.Civ.App.1957, no writ). *But in the present case, where settlement of the deceased wife's community interest in the policies was not made prior to the death of the insured and her heirs were not guilty of laches in failing to seek such compensation, the wife's community interest was never extinguished and the policies retained their community status up to the time of maturity. Consequently, the proceeds are community.* 371 S.W.2d at 696. (emphasis supplied)

Thus, the court in *Brown v. Lee* affirmed the trial court's award of one-half the proceeds to the estate of the wife and one-half to the estate of the husband.

It is well-established in Arizona that a beneficiary has no vested interests in the proceeds of the policy where the insured has reserved a right to change the beneficiary, *Doss v. Kalas,* 94 Ariz. 247, 383 P.2d 169 (1963); *McClain v. Beder,* 25 Ariz.App. 231, 542 P.2d 424 (1975). Sandra Alarcon's vested interest was not in the proceeds of the policy as such, but in a valuable contract right—the obligation of the insurer to pay such proceeds upon the death of Manuel.

*Survival of Interest in the Policy*

Having established that Sandra Alarcon had a valuable property interest in the contract of insurance, we turn to the third step in our analysis: did that interest survive until the subsequent death of Manuel?

■■■ The stipulated facts establish that Manuel Alarcon was pronounced dead minutes after Sandra Alarcon was pronounced dead. It seems illogical to assume that her property interest in the policy simply dissolved upon her death. The policy premiums were paid monthly. Had Manuel survived the remainder of the month, the next premium payment could not have been paid out of community funds and under *Gaethje v. Gaethje, supra,* Sandra's community interest in the policy would have expired. In *Gaethje,* a question arose as to whether the separate estate of the husband which had paid some premiums prior to the last paid premium had any interest in the proceeds. Our court held that the separate estate should not be given any vested interest in the proceeds of a policy where the separate estate had paid a premium for a risk "long since expired without loss". 8 Ariz.App. at 52. In the present case, the risk paid for with community property funds did not "expire without loss". Rather, the policy was in full force and effect at the time of Manuel's death because of the premiums paid with community funds. Had Manuel survived Sandra for such period of time that another premium was paid out of separate funds, the community would no longer have an interest in the policy for a risk since expired.

*Other Arguments*

■■■ Appellant argues that A.R.S. § 14–2808, a section of Arizona's Simultaneous Death Act relating to insurance proceeds, governs the distribution of the proceeds in this case.[2] Although our task would have

---

**2.** Insurance policies.

Where the insured and the beneficiary in a policy of life or accident insurance have died and there is no sufficient evidence that they have died otherwise than simultaneously the proceeds of the policy shall be distributed as if the insured had survived the beneficiary, but if the policy is community property of the insured and his spouse and there is no alternative beneficiary, or no alternative beneficiary except the estate or personal representatives of the in-

been easier if this were the case, we see no application of this statute to the present facts where the evidence clearly establishes that Sandra Alarcon died at 4:01 p.m. and Manuel died at 4:31 p.m. the same day.

■ Similarly, we see no application of A.R.S. § 14–2601, which requires that an heir survive the decedent by 120 hours for purposes of intestate succession. Proceeds from insurance policies do not form a part of the probate estate and are generally not subject to statutory probate provisions. *See Perry v. Perry,* 18 Ariz.App. 299, 501 P.2d 568 (1972); A.R.S. § 14–6201(A)(1).

■ Finally, we must determine the application of A.R.S. § 14–2803 in the facts of this case. That statute provides, in part:

C. A named beneficiary of a bond, life insurance policy or other contractual arrangement who feloniously and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy or other contractual arrangement, and it becomes payable as though the killer had predeceased the decedent.

D. Any other acquisition of property or interest by the killer shall be treated in accordance with the principles of this section.

E. A final judgment of conviction of felonious and intentional killing is conclusive for purposes of this section. In the absence of a conviction of felonious and intentional killing the court may determine by a preponderance of evidence whether the killing was felonious and intentional for purposes of this section.

This statute governs the effect of homicide on intestate succession, joint assets and beneficiary designations. The statute denies a person benefits from his or her own wrong. The trial court made no such finding of felonious and intentional killing. However, assuming arguendo, that the court found such a killing, the estate of Sandra Alarcon is entitled to one-half of the insurance proceeds as her vested community property interest and not as beneficiary under the policy. It is important to note that it is Sandra's estate that benefits from these proceeds of the policy—not Sandra herself.

■ A.R.S. § 14–2803 is clearly intended to prevent a person with unclean hands from collecting his victim's property. No intent to divest a person of his or her own vested property rights is manifested in this statute. Art. 2, Section 16 of the Arizona Constitution provides: "No conviction shall work a corruption of blood or forfeiture of estate." *See also* Van Slyck's discussion in Decedent's Estates Provisions of the 1974 Probate Code, at page 4–15 (1976 rev.).

California courts have addressed the issue of proceeds of a life insurance policy purchased with community funds where one spouse killed the other in circumstances rendering the slayer guilty of voluntary manslaughter. *See New York Life Insurance Company v. Cawthorne,* 121 Cal. Rptr. 808, 48 Cal.App.3d 651 (1975). In *New York Life,* the court held that, based on previous California cases, "... the wife's one-half vested interest in the life insurance policy not be forfeited because she accelerated the payment of the proceeds by killing her husband." 48 Cal. App.3d 651, 121 Cal.Rptr. at 811.

For the foregoing reasons, the decision of the trial court is reversed and it is ordered that one-half the proceeds be distributed to the Estate of Sandra Alarcon.

HOWARD, J., concurs.

HATHAWAY, Judge, dissenting.

I respectfully dissent. The proceeds of the life insurance policy purchased with community funds should be distributed according to the terms of the policy if doing so does not work a constructive fraud upon the community interest of the surviving spouse. *Gaethje v. Gaethje,* 8 Ariz.App. 47, 442 P.2d 870 (1968). That the primary reason for acquiring the policy was to further Sandra's welfare is loudly proclaimed

sured, the proceeds shall be distributed as community property under § 14–2807.

through her designation as beneficiary. Upon the demise of either spouse, there is no longer a community to protect. *Gaethje, supra.* At Sandra's death, the policy on Manuel's life had not matured. The majority's extension of the community in a state of suspended animation so that Sandra's estate could participate in one-half of the life insurance policy which matured subsequent to her death, is, in my view, unjustified. Nothing is shown which suggests that Sandra was being defrauded. The insurance policy constituted a simple contractual arrangement whereby if Sandra had survived, she would have received the entire proceeds. Where the beneficiary does not survive, the insured should ordinarily be free to designate another beneficiary. The majority opinion strains to reach a conclusion which I find unjustified and unsupported.

I would affirm.