625 P.2d 920

**Peggy H. BOWART,**
**Petitioner/Appellee/Cross-Appellant,**

v.

**Walter H. BOWART,**
**Respondent/Appellant/Cross-Appellee.**

**No. 2 CA–CIV 3522.**

Court of Appeals of Arizona,
Division 2.

Dec. 31, 1980.

Rehearing Denied Feb. 11, 1980.

Review Denied March 10, 1981.

appellant had not been placed under oath before signing the affidavit.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P. C. by John F. Molloy and Earl F. Daniels, III, Tucson, for petitioner/appellee/cross-appellant.

E. K. Parks, III, and Jack J. Rappeport, Tucson, for respondent/appellant/cross-appellee.

OPINION

HOWARD, Judge.

The determinative issues in this appeal and cross-appeal concern the trial court's disposition of certain real property in a dissolution proceeding.

Appellee is a beneficiary of the estate of William L. Mellon, her grandfather and the founder of Gulf Oil Corporation, as well as a beneficiary of her father's estate. She married appellant in 1969 and during their marriage, the main source of their income came from her trust funds which totaled approximately $250,000 per year. Appellant, a writer, sporadically received income from his writing efforts.

The dispute involves two properties, the Old Sabino Canyon Road property and the Aspen property.[1]

The Old Sabino Canyon Road property was purchased by appellee prior to their marriage with her own funds and title was taken in her name alone. All the mortgage payments, taxes and improvements have been paid for by appellee from her separate estate.

The history of the Aspen property is a little more complicated.[2] Prior to acquiring the Aspen property, the parties purchased the "Snowmass" property as joint tenants with right of survivorship with the understanding that appellee was to front all the money and in the event of sale, they would split any profits. The purchase price of the Aspen property, $618,306.46, was paid for as follows: Assumption by the parties of a mortgage held by Aspen Savings & Loan Association in the amount of $148,308.46; the balance by trading in the Snowmass property for which they received a credit of $50,000; and $420,000 obtained as a loan from the Mellon Bank which was secured by appellee's separate property. Both parties signed the note on this loan. The evidence at trial, including appellant's own testimony, was that the Aspen property was purchased with the understanding that appellee's money would be used to acquire it and that they would share equally any profits obtained upon the sale of the property after appellee's investment had been reimbursed. The fair market value of the Aspen property as of February 1, 1979, approximately two and one-half months prior to the trial, was between $800,000 and $850,000.

The trial court decreed the Old Sabino Canyon Road property to be the sole and separate property of appellee. The trial court ordered the Aspen property to be sold and the parties were ordered to accept the first bona fide cash offer of at least $900,000. Appellee was first to be reimbursed from the proceeds of sale for certain sums she paid towards the Aspen property, including the $420,000 borrowed from the Mellon Bank and the interest she had paid on the loan since December 31, 1978. The trial court also ordered appellee to pay appellant spousal maintenance of $2,000 per month for 15 months and $12,500 for attorney's fees and costs.

THE APPEAL

Appellant raises the following issues: (1) Was there clear and convincing evidence that an oral agreement concerning the division of the profits on the Aspen property existed and if so, was this oral agreement barred by the statute of frauds? (2) Did the trial court err in requiring the $420,000 to be paid back before the profits were split on the Aspen property? (3) Did the trial court lack jurisdiction to order that the Aspen property be sold and to set a price for such sale? (4) Did the trial court err in its disposition of the Old Sabino Canyon Road property and did it err in failing to grant the community a lien on the property for labor expended on improvements? (5) Was error committed by failing to award the husband an interest in the tax savings accorded to the parties by virtue of their marriage? (6) Did the trial court abuse its discretion in failing to give appellant more spousal maintenance? (7) Did the court commit error in refusing to grant the husband attorney's fees for post-trial and appellate representation?

■ The testimony of the parties indicates that there was an oral agreement between them regarding the Aspen property and establishes its terms. Appellant's contention that the oral agreement is barred by the statute of frauds, A.R.S. Sec. 44–101(6), is without merit since the agreement between them was not one "for the sale of real property or an interest therein" but an agreement which set forth their rights and responsibilities in connection with the acquisition of the property and its intended sale. See *Eads v. Murphy*, 27 Ariz. 267, 232 P. 877 (1925).

---

1. There was other realty which was divided equally between the parties.

2. It is located in Aspen, Colorado and consists of 59.68 acres of improved real estate.

■ Appellant's contention that the oral agreement is invalidated by A.R.S., Sec. 33–401(A) is equally without merit. This statute states:

"No estate . . ., freehold . . . shall be conveyed unless the conveyance is by an instrument in writing, subscribed and delivered by the party disposing of the estate . . . ."

Since no estate was being conveyed here, the statute is inapplicable.

■ Appellant raises many issues concerning the trial court's order that appellee get reimbursed for the $420,000 loan from the Mellon Bank from the proceeds of the Aspen property before any division of the profit is made. The issues raised need not be detailed here since they are irrelevant in view of the parties' agreement that appellee was to recover her investment in the property. The trial court's treatment of the loan is in accordance with this agreement.

■ We do not agree with appellant's contention that the trial court lacked jurisdiction to order the parties to sell the Aspen property because it was located in Colorado. It can do so if it has in personam jurisdiction over the parties which it had here. See *Fall v. Eastin*, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909); *Kennedy v. Morrow*, 77 Ariz. 152, 268 P.2d 326 (1954); *Santa Cruz Ranch v. Superior Court*, 76 Ariz. 19, 258 P.2d 413 (1953); *Noble v. Noble*, 26 Ariz. App. 89, 546 P.2d 358 (1976). A.R.S. Sec. 25–318(A) provides that the court shall divide joint tenancy property equitably, although not necessarily in kind. This gives the court the authority to order a sale of the property such as was done here. We also believe it has the power to set a minimum price for the sale of the property in order to prevent its sale for less than fair market value.

Appellant claims that the court should have awarded the community a lien for the improvements made on the Old Sabino Canyon Road property because funds in the household account were used to pay for the improvements and such funds were community funds. In the alternative, he argues that he expended labor and effort on the improvements during the marriage.

■ When separate funds are placed in the joint checking account no presumption arises that the owner of those separate funds has made a gift of one-half of the funds to his or her spouse. *Noble v. Noble*, supra. The record discloses that the source of the funds in the household account was almost entirely from appellee's separate trust. Appellant's contributions to the household account were sporadic and meager and they did not render the entire household account community property. See *Noble v. Noble*, supra. While there was evidence that appellant was authorized to write checks on the household account, the evidence also discloses that this was merely a matter of convenience and was not intended to change the nature of the funds. Furthermore, if any labor or effort was expended by appellant towards the improvement of the property, its value was never shown. The trial court did not err in failing to find that the community had a lien.

■ Appellant also claims, based upon a statement made by appellee to him, that one-half of the Old Sabino Canyon Road property is his. We do not agree. Appellee testified that she had told him that the home was his as well as hers. She clarified this when she stated:

"I certainly said to him, 'It is your home as well as mine,' but to me, it was sort of a philosophical question, if you have, he, I guess, always felt, he always told me in his heart that he felt unless he owned half of it, he couldn't feel it was his own.

And this is what he said. And to me, I have lived in places that I felt were my home, that maybe I didn't own. I mean, the question of not feeling it is your home unless you own it, is something that I, you know, just really couldn't understand altogether, and *I never considered making a gift to him.* I considered maybe considering it, but it never was something I promised him or I said to

him, with any seriousness." (Emphasis added)

This testimony together with the fact that the property was taken in her own name, prior to marriage, and paid for entirely by her, sustains the trial court's failure to award appellant one-half interest in the property.

■ Based upon some statements made by the trial court during trial, appellant claims the court intended to award him an interest in the tax savings which were accorded to the parties by virtue of their marriage and that a new trial is warranted on this issue since the judgment is deficient in this respect. We do not agree. Since appellant did present evidence on this issue, we assume the trial court, in establishing the property disposition and maintenance awards, considered all the evidence presented including the effect of certain tax deductions. Nor do we agree with appellant's assertion that under *Guerrero v. Guerrero*, 18 Ariz.App. 400, 502 P.2d 1077 (1972), tax benefits should be treated like retirement benefits and profit sharing funds, i. e., deemed community property.

■ An order of spousal maintenance is subject only to limited review and if there is reasonable evidence to support the court's determination, it will not be disturbed. *Williams v. Williams*, 19 Ariz. App. 544, 509 P.2d 237 (1973). We do not agree with appellant's contention that the trial court erred in its award of spousal maintenance since the evidence discloses that after an appropriate length of time, appellant can or should be self-supporting.

■ Nor do we agree with appellant's claim that the court erred when it failed to grant him attorney's fees incurred post-trial and for the appeal. Having awarded him substantial property, the trial court could have concluded that appellant is able to pay his own attorney's fees.

## THE CROSS–APPEAL

Appellee presents the following issues in her cross-appeal: (1) Did the trial court err in awarding spousal maintenance to appellant? (2) Was error committed in awarding attorney's fees and costs to appellant? (3) Was the joint tenancy and community property divided equitably? (4) Did the trial court err in failing to impose a lien in the wife's favor upon the husband's interest in the Barnes property? (5) Did the court commit error in failing to allow appellee to recover the interest paid on the Mellon loan prior to 1979? (6) Did the trial court err in refusing to modify the terms and conditions of sale of the Aspen property?

■ Appellee contends that the trial court erred in awarding appellant spousal maintenance, attorney's fees and court costs. We do not agree. As we have previously stated, such awards are within the sound discretion of the trial court. Considering that appellant has not been self-supporting during this marriage, we do not believe the trial court erred in granting him spousal maintenance for a limited time in order to allow him to "get back on his feet". Neither do we believe the trial court abused its discretion in granting him attorney's fees.

Citing *Wayt v. Wayt*, 123 Ariz. 444, 600 P.2d 748 (1979), appellee claims that the trial court erred when it divided the jointly held realty between the parties since she was the one who provided all the money for the property. We do not agree. *Wayt* is limited to the facts set forth therein. It concerned a residence held in joint tenancy which the trial court awarded to the wife. The supreme court found the trial court did not abuse its discretion because the source of the funds for the property was in large measure from the wife's separate property and she had supported the husband for a number of years when he could have worked. However, *Wayt* does not stand for the proposition that the trial court abuses its discretion if it makes an equal distribution of such property.

■ Appellee is correct in maintaining that she is entitled to reimbursement for the separate funds she expended on property known as the Barnes property. The trial court found there was a gift of one-half of

the property to appellant when title was taken in joint tenancy with right of survivorship. Both parties testified there was no agreement regarding the division of the property nor for reimbursement of the wife's contribution. When one joint tenant expends sums to benefit the other joint tenant, as appellee did here by using her separate funds to pay the joint obligation, the paying joint tenant is entitled to reimbursement. *Graham v. Allen*, 11 Ariz.App. 207, 463 P.2d 102 (1970); 20 Am.Jur.2d, Cotenancy and Joint Ownership Sec. 58 at 147. Appellee is therefore entitled to a reimbursement in the amount of $15,457.24.

■ Appellee contends the trial court erred when it failed to allow her to recover the pre-1979 interest paid on the $420,000 Mellon loan. We agree. Since the trial court believed the parties' agreement established that the Aspen property would be sold and that appellee would be reimbursed for her expenses in purchasing the property, the failure to grant her pre-1979 interest was contrary to the evidence.

■ Appellant contends that the final judgment requires modification since the forced sale of the Aspen property at $900,000 was determined in August of 1979 and at today's market price would be inadequate. The record does not show that the appreciation of real estate in Aspen, Colorado is at a certain rate. There is nothing before us to show that the amount is not adequate at today's market and we have nothing before us to show an abuse of the court's discretion in ordering sale at the terms imposed. We see no reason why the trial court cannot, if the condition of the market dictates, grant a motion under Rule 60(c) of the Arizona Rules of Civil Procedure, 16 A.R.S., and modify that aspect of the judgment in order to arrive at an equitable solution.

Therefore, Paragraph 3(e)(2) of the amended judgment is modified to read as follows:

"The amounts owing to the Mellon Bank in the sum of $420,000 plus all interest which has accrued or been paid on said indebtedness."

The paragraph in the amended judgment which was substituted for Paragraph 3(c) and (d) of the original judgment is amended by adding the following paragraph thereto:

"The petitioner is awarded the sum of $15,457.24 as reimbursement for mortgage payments and taxes paid by appellee on the Barnes property from her separate funds, and she is granted a lien on that portion of said property awarded to her husband and described in Exhibits C and D of the judgment filed August 27, 1978 in order to secure the payment of the aforementioned sum."

The judgment is affirmed as modified.

HATHAWAY, C. J., and RICHMOND, J., concur.