680 P.2d 1217

In re the MARRIAGE OF Jacquelyn Michelson BERGER, Petitioner-Appellant, Cross Appellee,

and

Michael David Berger, Respondent-Appellee, Cross-Appellant.

Jacquelyn Michelson BERGER, Plaintiff-Appellant, Cross-Appellee,

v.

Michael David BERGER and Teresi-Berger Custom Home Builders, Inc., Defendants-Appellees, Cross Appellants.

No. 1 CA–CIV 5859.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 27, 1983.

Supplemental Opinion Dec. 6, 1983.

Review Denied April 10, 1984.

Henry, Kimerer, LaVelle & Erlichman by Michael J. LaVelle, Michael P. Stark, Phoenix, for plaintiff-appellant, cross appellee.

Miller, Mark & Simon, Ltd. by William J. Simon, Stephen G. Campbell, Phoenix, for defendants-appellees, cross appellants.

## OPINION

YALE McFATE, Judge (Retired).

This appeal arises from a dissolution decree which the trial court entered on September 17, 1980 and amended on October 22, 1980 and January 30, 1981. Petitioner-appellant Jacquelyn Michelson Berger (wife) contends that the trial court improperly failed to order reimbursement of her separate funds expended in improving a lot held in joint tenancy with her husband. Mrs. Berger also maintains that the trial court applied an incorrect rate of post-judgment interest on a judgment which she obtained against her husband based on a default in payment of promissory notes.

Respondent-appellee Michael David Berger (husband) cross-appeals. He argues that the trial court erred in ordering him to pay $400 per month child support and in failing to award him spousal maintenance and attorneys' fees. Additionally, he raises issues of: whether the trial court erred in finding him indebted to his wife on three promissory notes; whether the trial court failed to make an equitable division of the community personalty; whether the trial court erred in granting the wife an option to purchase the family home; and whether the trial court erred in failing to properly dispose of $18,000 in the husband's attorneys' trust account.

The facts pertinent to a resolution of this appeal are as follows.

At the time of the parties' marriage in 1968, the wife possessed substantial separate property. The husband owned few assets and during the marriage his employment and business endeavors produced only a moderate community income. Consequently, Mrs. Berger's separate funds provided the parties' main support.

In 1971, the husband started Jackie's Dress Shops, Inc. To finance the business, the parties executed a loan agreement in which Michael Berger borrowed $60,000 of his wife's separate funds and signed three promissory notes totaling that sum. These notes provided that only his sole and separate property was obligated to repay the loan. Eventually the business failed and the corporation was dissolved. Mrs. Berger, however, did not demand payment of the notes until she filed a civil complaint in August, 1979. That action was consolidated by court order with the dissolution petition previously filed by the wife on June 8, 1979.

A second transaction relevant to this appeal occurred in 1972. The Bergers purchased an unimproved residential lot in Paradise Valley at the approximate cost of $25,000. The apparent source of the funds for the lot was the wife's separate property. Title to the lot was taken in joint tenancy.

Prior to the actual purchase of the lot, the Bergers began negotiations for the construction of a house on that site. After the lot purchase, the Bergers invested $165,000 to $170,000 in building the house. Of that amount, $65,000 was borrowed and the remainder was funded by the wife's separate funds.

As noted above, Jacquelyn Berger petitioned for a dissolution of the marriage in June, 1979. After trial on the contested issues, the trial court entered its findings of fact and conclusions of law. In the final decree, the trial court disposed of the parties' substantial assets, determined the husband's obligation on the promissory notes, and issued orders concerning child support, spousal maintenance and attorneys' fees. Both parties have appealed.

## I. FAMILY RESIDENCE

With respect to the family residence, the trial court made the following findings:

6. The residence of the parties at 4707 E. Saguaro Place, Paradise Valley, Arizona 85253, was titled in joint tenancy and recorded August 25, 1972.

7. The original funds for the residential lot are from the sole and separate funds of Petitioner, but a gift of said property was made when it was placed in joint tenancy.

8. At the time the residential lot was purchased, it was placed in joint tenancy.

9. Subsequently, a house was built on the lot with the sole and separate funds of Petitioner. Prior to the purchase of the residential lot legally described above, the parties were actively engaged in having a new home built to their specifications. The plans and specifications which were used were dated April 26, 1972 (Exhibit 46). On the same day, August 25, 1972, that the deed was recorded (Exhibit 49), they entered into an agreement to have a house constructed for them (Exhibit 46) and, in connection therewith, obtained financing from the Valley National Bank (Exhibit 45).

10. The parties were knowledgeable of the legal significance of joint tenancy, community property and sole and separate property.

11. There was a gift to the community by the Wife of her sole and separate property as it relates to both the lot and the improvements on the lot of the residence.

12. The residence has a value of $470,000 and is subject to a deed of trust with the principal balance due in the amount of $53,000.

■ The wife contends that the trial court erred in awarding the husband a one-half interest in the combined value of the lot and residence. She acknowledges that pursuant to the rule in *Blaine v. Blaine*, 63 Ariz. 100, 159 P.2d 786 (1945), and *Becchelli v. Becchelli*, 109 Ariz. 229, 508 P.2d 59 (1973), the husband is entitled to a one-half interest in the lot.[1]

---

1. Mrs. Berger requests this court to overrule *Becchelli* and its progeny. This court lacks authority to disaffirm prior decisions of the Arizo-na Supreme Court. *McKay v. Industrial Commission*, 103 Ariz. 191, 438 P.2d 757 (1968).

■ In *Blaine* and *Becchelli*, our supreme court recognized a presumption of gift to the wife when the husband purchased property with his separate funds and took title jointly with his wife. This presumption also applies when the spouse expending separate funds is the wife. *See Noble v. Noble*, 26 Ariz.App. 89, 546 P.2d 358 (1976).

Mrs. Berger argues, however, that the presumption of gift does not extend to improvements subsequently placed upon the property. She maintains that under the ordinary rules of joint tenancy, a co-tenant improving joint tenancy property with separate funds is entitled to reimbursement upon partition of the property, citing *Collier v. Collier*, 73 Ariz. 405, 242 P.2d 537 (1952); *Graham v. Allen*, 11 Ariz.App. 207, 463 P.2d 102 (1970); and *Bowart v. Bowart*, 128 Ariz. 331, 625 P.2d 920 (App. 1980). According to Mrs. Berger, to apply the presumption of gift to improvements placed on the property *after its acquisition* would deny her the right to reimbursement recognized in *Collier, Graham* and *Bowart.*

In response, the husband argues that the real issue is whether the trial court erred in finding that a gift of the improvements was made when the lot was placed in joint tenancy. He maintains that the evidence was more than sufficient to demonstrate the wife's donative intent with respect to the residence. In addition, the husband contends that due to the "contemporaneous" nature of the lot purchase and construction plans, the *Becchelli* presumption of gift applies.

■ This court will not set aside the trial court's findings of fact unless clearly erroneous. *State ex rel. LaSota v. Arizona Licensed Beverage Association*, 128 Ariz. 515, 627 P.2d 666 (1981); Rule 52(a), Arizona Rules of Civil Procedure, 16 A.R.S. We therefore review the record to determine whether the finding of gift of the improvements was clearly erroneous.

■ In finding that the improvements paid for by the wife with her separate funds constituted a gift to her husband, the trial court emphasized the contemporaneous nature of the lot purchase and home construction plans. However, the proximity of the construction plans to the lot purchase has no independent relevance to whether she intended a gift of the improvements. Apparently the trial court considered the contemporaneous nature of the transactions to require application of the *Becchelli* presumption to both lot and home, without regard to actual intent.

■ We agree with the wife, however, that extension of the *Becchelli* presumption to improvements placed on property soon after its acquisition violates the principles of *Collier v. Collier, supra; Graham v. Allen, supra;* and *Bowart v. Bowart, supra.*

In *Collier*, the husband caused real property which he owned as separate property to be deeded to both himself and his wife in joint tenancy. Thereafter, the wife invested her separate funds in improving the property. The supreme court recognized a co-tenant's right to reimbursement for funds expended in improving joint tenancy property with the consent of the other co-tenant. The court further recognized that the general rules pertaining to joint tenancy apply when the joint tenants are husband and wife.

Similarly, in *Bowart*, Division Two of this court recognized that a presumption of gift arises when title to real property is taken in joint tenancy. However, the court properly concluded that:

Appellee is correct in maintaining that she is entitled to reimbursement for the separate funds she expended on property known as the Barnes property. The trial court found there was a gift of one-half of the property to appellant when title was taken in joint tenancy with right of survivorship. Both parties testified there was no agreement regarding the division of the property nor for reimbursement of the wife's contribution. When one joint tenant expends sums to benefit the other joint tenant, as appellee did here by using her separate funds to

pay the joint obligation, the paying joint tenant is entitled to reimbursement. *Graham v. Allen,* 11 Ariz.App. 207, 463 P.2d 102 (1970); 20 Am.Jur.2d, Cotenancy and Joint Ownership Sec. 58 at 147. Appellee is therefore entitled to a reimbursement in the amount of $15,457.24. 128 Ariz. at 336–337, 625 P.2d at 925–926.

The husband attempts to distinguish *Bowart,* which involved improvements placed on a joint tenancy lot five years after its acquisition from this case, involving improvements placed "contemporaneously with the acquisition of title." His use of the term "contemporaneous", however, is misleading.

At the time the Bergers took title in joint tenancy, the lot was bare and unimproved. Consequently, the improvements were not "contemporaneously" placed on the lot but were added after the parties acquired title. The husband has cited no authority which negates an improving co-tenant's right to reimbursement or which extends the presumption of gift to improvements made after the property is acquired. To the extent the trial court's finding of gift was based upon the presumption of gift set forth in *Becchelli,* that finding was clearly erroneous.

■ The husband maintains that the record supports a finding of gift of the improvements, irrespective of any legal presumption. If there is any credible evidence to support the trial court's findings, we must accept those findings. *Wilson v. Tucson General Hospital,* 18 Ariz.App. 31, 499 P.2d 762 (1972).

■ To constitute a valid inter vivos gift of real property, there must be a clear, unmistakable and unequivocal intention on the donor's part to make a gift. *Stewart v. Damron,* 63 Ariz. 158, 160 P.2d 321 (1945); *Matter of Estate of Johnson,* 129 Ariz. 252, 630 P.2d 548 (App.1981); 38 Am.Jur.2d *Gifts* § 17 (1968). Mr. Berger states that the intent necessary to support a gift "need not be expressed but can be inferred", particularly in the context of a marital relationship. We agree that express words of

gift are not required, 41 C.J.S.2d *Husband and Wife* § 157 (1944). Donative intent is ascertained in light of all surrounding circumstances, however, and is not inferred simply because of a marital relationship between the parties. *See Neely v. Neely,* 115 Ariz. 47, 563 P.2d 302 (App.1977).

The husband raises the following circumstances as manifesting a clear donative intent with respect to the improvements. He first points to the fact that Jacquelyn Berger was not a novice in dealing with real property and had the benefit of counsel when she placed the lot in joint tenancy. Mrs. Berger's apparent awareness of the legal effect of placing the title to the lot in joint tenancy, however, bears only upon the presumption of gift as to the lot. It does not indicate any intention on her part that her husband should receive a gift of one-half her separate funds which eventually would pay for the improvements.

Michael Berger calls our attention to the parties' 1973 income tax return as additional evidence of the wife's donative intent. Prior to the lot purchase and construction of the home, the parties owned a home in Phoenix, which was held in joint tenancy. In 1974, the Bergers completed Form 2119 pertaining to the "Sale or Exchange of Personal Residence". By leaving a portion of the form blank, the Bergers indicated that their ownership interests in the old and new residence were in the same proportion. Michael Berger characterizes this as an "admission" that he owned a one-half interest in the Paradise Valley home.

■ Mrs. Berger does not deny that improvements become a part of the underlying real property and acquire the ownership characteristics of the real property. *Potthoff v. Potthoff,* 128 Ariz. 557, 627 P.2d 708 (App.1981). However, the husband's ownership interest is not inconsistent with the wife's right to reimbursement as an improving joint tenant. *See Collier, supra.* The 1973 return is not evidence of a donative intent on the part of the wife.

Finally, the husband points to the house plans prepared prior to the lot purchase and the construction agreement signed on

the day the joint tenancy deed was recorded. He argues that these transactions were essentially contemporaneous and thereby indicate an intention on the wife's part to make a gift of the lot and the improvements.

We earlier noted, however, that the proximity in time of the home construction plans to the lot purchase was not indicative of actual intent to make a gift of the improvements. This is because, under the *Becchelli* rule, a gift of the lot was presumed *without* a showing of actual intent, and the burden was on the wife to rebut the presumption. However, the fact that the parties planned at the time of acquiring the lot to later erect improvements thereon gives rise to no inference or presumption that the one who ultimately pays for the improvements with his or her separate funds intends a gift thereof.

On review of the record, we conclude that the husband failed to present clear and sufficient evidence of the wife's intent to make a gift of her separate funds which were used to pay for improving the property. Consequently, we set aside the trial court's finding that such a gift was intended as clearly erroneous.

Mrs. Berger then argues that, having established her right to reimbursement, she is entitled to recover one-half the amount by which the improvements paid for with her separate funds enhanced the value of the property. She argues in the alternative that if she is entitled to only one-half the original expenditures therefor, she should be awarded prejudgment interest from the date the improvements were made.

Where a co-tenant makes improvements in good faith, which are permanent and useful or necessary to the enjoyment of the property, the court as a general rule awards him the resulting increase in the value of the estate, and not the actual cost. *Thomas v. Thomas,* 143 Colo. 130, 352 P.2d

279 (1960); *Miller v. Miller,* 222 Kan. 317, 564 P.2d 524 (1977); *Maas v. Lucas,* 29 Md.App. 521, 349 A.2d 655 (1975); 20 Am. Jur.2d *Cotenancy and Joint Ownership* § 63 (1965); 59 Am.Jur.2d *Partition* § 53 (1971). Michael Berger contends, however, that the right to reimbursement is governed by equitable principles. He relies on several Arizona cases involving the expenditure of community funds to improve one spouse's separate property for the proposition that there is no clear rule of reimbursement and that the amount of reimbursement varies with the equities of each case. He further argues that under the circumstances presented here, it would be inequitable to award the wife the enhanced value.

We recognize that the right to reimbursement is an equitable right and that the recovery should be just and equitable under all the circumstances. *Hartog v. Siegler,* 615 S.W.2d 632 (Mo.App.1981); 20 Am.Jur.2d § 63, *supra.* The husband is wrong, however, in asserting that the trial court has its option of applying either the enhanced value or actual cost measure of contribution. As noted above, the general rules of joint tenancy apply between husband and wife, *Collier, supra,* and the general measure for reimbursement where the property has appreciated in value is the enhanced value.[2] Moreover, with regard to the community property reimbursement cases upon which the husband relies, our supreme court recently stated:

> We recognize that litigants and scholars have been confused about which formula should be utilized to reimburse the community for community funds expended for the benefit of separate property. *Hanrahan v. Sims,* 20 Ariz.App. 313, 512 P.2d 617 (1973); W. Reppy & W. De Funiak, *Community Property in the United States,* 244–45 (1975). In *Rothman v. Rumbeck,* 54 Ariz. 443, 96 P.2d 755 (1939), the wife was permitted reim-

2. The court in *Collier* did provide an example indicating that a joint tenant is only entitled to one-half the cost of his improvements. The general example was not a holding of the court and is inconsistent with the general rules of joint tenancy. We therefore do not consider it a binding and authoritative statement of the rule of contribution.

bursement of one-half life insurance premiums paid and denied a proportionate part of policy proceeds. *But see Everson v. Everson,* 24 Ariz.App. 239, 537 P.2d 624 (1975). We do not decide which formula, amount-spent or value-at-dissolution, is the more desirable in cases involving insurance. We do reaffirm the value-at-dissolution formula for real property cases adopted in *Lawson v. Ridgeway,* 72 Ariz. 253, 233 P.2d 459 (1951). *See also Tester v. Tester,* 123 Ariz. 41, 597 P.2d 194 (App.1979).

*Honnas v. Honnas,* 133 Ariz. 39, 40–41, 648 P.2d 1045, 1046–1047 (1982).

The husband argues that the underlying purpose of the value measure of contribution, as opposed to the cost measure, is to protect the other co-tenants against extravagant, useless or depreciating improvements. He contends that such a rule should not apply in a situation, as here, where the improvement has clearly appreciated in value.

 It is true that the reason usually stated for the value rule is protection of a co-tenant against improvident investments by an improving co-tenant. *Thomas, supra; Maas, supra;* 59 Am.Jur.2d § 53, *supra.* Such a rule, however, also protects the co-tenant whose improvements, purchased with separate funds, have greatly appreciated in value. *Cf. Honnas, supra* (community entitled to its share of appreciated value of improvements attained through community funds and labor, not merely one-half the community funds expended on improvements.) It would be inequitable to repay the wife's investment made in 1972 with 1983 dollars while her husband, the nonimproving co-tenant, benefits from the increased value of the improvements made with her separate funds.

 We also note that there are no special equities justifying departure from the rule of increased value. The husband alludes in his brief to the possibility that some community funds were expended in constructing the home. At trial, however, he acknowledged that the joint bank account funds used by the wife to pay for

construction constituted her separate property. There is no presumed gift of such funds. *O'Hair v. O'Hair,* 109 Ariz. 236, 508 P.2d 66 (1973). The trial court's finding that the home was constructed entirely with the wife's separate funds is inaccurate. The evidence discloses that the parties secured a construction loan of $65,000. There was no evidence that this loan was anything but a community obligation. Hence, the wife's right to reimbursement relates to one-half of that percentage of the value of the improvements at time of trial which her separate expenditures bear to the total cost, including the construction loan.

Finally, the husband argues that use of the "enhanced value" measure is inequitable because, by his estimation, he would leave the marriage owing $25,000 after consideration of the promissory note debt. This argument is more properly addressed in our review of the trial court's order with respect to spousal maintenance, child support and attorneys' fees.

In summary, we find that the trial court erred in finding a gift by the wife of her separate funds used to pay for the improvements. Mrs. Berger is entitled to a reimbursement credit in accordance with the formula hereinabove set forth, the exact amount of which shall be determined by the trial court in further proceedings consistent with this opinion.

## II. PROMISSORY NOTES

(A) HUSBAND'S LIABILITY ON THE NOTES. In its September 17, 1980 decree of dissolution, the trial court concluded that Michael Berger was indebted to his wife on the three promissory notes in the sum of $60,000 principal plus interest. Michael Berger contends that he is not liable on the notes. Jacquelyn Berger maintains that the trial court properly held her husband liable on the notes but erred in computing the post-decree interest rate at 7%. We first consider whether the husband is liable on the notes.

The husband points to the provision in the separate loan agreement which states that "the obligation to repay such advances [evidenced by the promissory notes] binds only his sole and separate property...." He argues that in light of this provision, the wife had the burden of showing the existence of a separate property fund, which she could not do because of his lack of separate funds during the marriage. The husband relies on several "specific fund" cases which hold that where payment of money is to come from a specific fund or source, the failure of the fund to come into existence defeats the right of recovery.

We find those cases inapplicable. In *Campisano v. Phillips*, 26 Ariz.App. 174, 547 P.2d 26 (1976), and *Parsons v. Bristol Development Co.*, 62 Cal.2d 861, 44 Cal. Rptr. 767, 402 P.2d 839 (1965), an architect sought payment for services. In both cases, an express written agreement provided that payment was to be from a specific source: the first and last construction draw in *Campisano* and from the construction loan funds in *Parsons*. Similarly, in *Williams v. Ligon*, 144 So.2d 131 (La.App. 1962), the employer expressly agreed to limit payment of the note executed by his employee for employer advances solely to commissions earned by the employee. In *Stern v. Franks*, 35 Cal.App.2d 676, 96 P.2d 802 (1939), the court inferred an agreement to limit payment of a note to profits derived from a business venture.

These "specific fund" cases involve very limited and narrowly defined sources of payment and situations in which it would become clear within a definite period whether the fund was in existence or would come into existence. Here, no particular separate property was designated as the source of payment. Instead, payment was limited generally to the husband's separate property. Prior to the expiration of the time in which the wife could sue on the notes, the husband might obtain separate property in several ways, including gift, inheritance, or by operation of a divorce decree.

The husband then argues that although the loan agreement merely states that the husband's separate property is bound, the parties contemplated the separate profits of Jackie's Dress Shops to be the "specific fund" from which repayment was to be made. As support for this contention, he points out that he had no other separate property prior to the execution of the loan agreement and that the parties were not contemplating divorce at the time they executed the agreement. We disagree with this argument.

First, the parties, who were represented by counsel, failed to specifically designate the profits from Jackie's Dress Shops as the source of repayment. This indicates that the parties intended any source of separate property which the husband might acquire to be liable for the debt. That the husband acquired separate property in a manner not then contemplated (*i.e.*, through divorce) is irrelevant.

Second, the husband's argument that he had no separate property at the time of the agreement is inaccurate. The parties owned a home in Phoenix in joint tenancy at that time. Each joint owner has a separate interest in jointly held property. *Collier v. Collier*, 73 Ariz. 405, 242 P.2d 537 (1952); *Batesole v. Batesole*, 24 Ariz. App. 83, 535 P.2d 1314 (1975).

Finally, the husband relies on *Restatement of Contracts*, § 395 (1932), which states:

§ 395. When Failure of a Condition to Occur Discharges a Duty.

A contractual duty is discharged by the unexcused failure of a condition to occur within the time necessary to create a right to the immediate performance of the duty.

He maintains that Mrs. Berger had a right to demand payment at the time of the due dates specified in the promissory notes. He further contends that his possession of separate property was a condition precedent to the contractual duty of payment and that the condition failed to occur at the

time the notes fell due, hence the notes were discharged.

■ Aside from any question of the applicability of this section to negotiable instruments, under the facts of this case, there was no failure of a condition precedent to the obligation to pay the notes within the time stated in § 395, *supra.*

The right to immediate payment accrued when the notes matured, but the ownership of separate estate by the payor at that moment in time was not a condition necessary to the creation of that right. Husband confuses the obligation to pay at maturity with the contractual limitation on the type of property to which the payee may resort for payment. The distinction is recognized by the words of the contract: "The obligation to repay such advances (notes) binds only his sole and separate property." The obligation to repay is noted as well as the limitation on the source of payment. We conclude that § 395, *supra,* of the Restatement is inapplicable to the facts of this case.

■ We find that the husband was indebted to the wife on the promissory notes (payable only from his sole and separate property). The trial court properly entered judgment on the notes in favor of the wife.

(B) INTEREST RATE. The wife contends that the trial court erred in setting the post-judgment interest rate on the notes at 7%. In the September 17, 1980 decree, the trial court awarded 10% post-judgment interest, rather than the 7% rate of interest provided in the notes. In its January 30, 1981 order, however, the trial court modified the decree. The modification provided for a 7% post-judgment interest rate.

A.R.S. § 44–1201 provides:
§ 44–1201. Rate of Interest for loan or indebtedness; interest on judgments

A. Interest on any loan, indebtedness, judgment or other obligation shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to.

B. A judgment given on an agreement bearing a higher rate not in excess of the maximum permitted by law shall bear the rate of interest provided in the agreement, and it shall be specified in the judgment.

■ According to Mrs. Berger, the clause "unless a different rate is contracted for in writing" applies only to loans and indebtedness. She argues that a money judgment extinguishes the obligation represented by the notes and the interest rate provided in the notes. Consequently, she argues that the interest rate on the notes has no efficacy after judgment unless § 44–1201 specifically provided for the survival of the interest rate on underlying obligations. However, there is nothing in the statute to suggest that the above-quoted language applies only to loans and indebtedness. Where the language of a statute is plain or unambiguous, courts must observe the natural import of the language used if the meaning does not lead to an impossibility or absurdity. *Members of the Board of Education v. Leslie,* 112 Ariz. 463, 543 P.2d 775 (1975). The words "unless a different rate is contracted for in writing" obviously apply to judgments.

If Paragraph A of A.R.S. § 44–1201, *supra,* means that a judgment must bear interest at a rate specified in the underlying agreement upon which the judgment was based, then we have these untoward results: if the underlying agreement bore interest higher than 10%, then Paragraph B is superfluous because Paragraph A likewise mandates that interest on the judgment be at the higher rate. If the interest provided in the underlying agreement was lower than 10%, then Paragraph B is ambiguous. By omitting from Paragraph B any reference to agreements specifying interest less than 10%, it is unclear whether the statute was intended to: (1) fix a minimum interest rate of 10% for all judgments and raise it only if the underlying agreement specified a greater rate, or (2) fix the interest at the lower agreed rate mentioned in Paragraph A. If we adopt the latter meaning, we must ignore the doctrine of

merger of the underlying agreement in the judgment and we must consider the interest contract pertaining to that agreement as tantamount to a contract pertaining to the judgment itself.

■ We believe this statute can be construed in a manner which avoids ambiguity and superfluity and gives meaning to each portion thereof. The case law requires such approach. *State v. Superior Court for Maricopa County*, 113 Ariz. 248, 550 P.2d 626 (1976); *State v. Arthur*, 125 Ariz. 153, 608 P.2d 90 (App.1980). It will be noted that in Paragraph A there is no separate reference to the underlying agreement or debt which is merged in a particular judgment as there is in Paragraph B. The text refers to designated types of obligations; the word "judgment" is separately listed. This leads us to conclude that in respect to judgments, any written contract which specifies an interest rate different from 10% must concern the judgment itself. Thus, rates of interest provided in agreements merged in a judgment are distinguished from rates of interest agreed to in respect to particular judgments. A typical example of the latter type of agreement would be a stipulation that a judgment to be entered shall bear interest at a designated percent, more or less than 10%. Under Paragraph A, absent an agreement as to the rate applicable to a particular judgment, the statutory rate of 10% applies, even though the underlying indebtedness which merged in the judgment provided a higher rate. This result may be tinged with an element of unfairness, for there is no reason why a creditor should not retain the benefit of his interest bargain after judgment. Otherwise he is penalized for reducing his claim to judgment. To remedy the apparent shortcomings of Paragraph A, Paragraph B gives him the right to judgment interest at the higher rate. Paragraph B, when considered in this con-

text, becomes quite meaningful, and the entire section becomes an integrated, unambiguous statute.[3]

■ Accordingly, and in summary, A.R.S. § 44–1201 provides that interest on a judgment shall be 10% unless a different rate of interest for the judgment itself is agreed to in writing, in which event the judgment shall bear the rate of interest agreed to, whether it is more or less than 10%. However, if an agreement bearing a higher interest rate than 10% is reduced to judgment (and the parties do not otherwise agree), the judgment shall bear interest as provided in the underlying agreement.

■ In view of the foregoing, we must reverse the trial court's ruling with respect to post-judgment interest, and direct such interest be fixed at 10%.

## III. SPOUSAL MAINTENANCE, CHILD SUPPORT AND ATTORNEYS' FEES

■ In his cross-appeal, the husband contests the trial court's orders with regard to spousal maintenance, child support and attorneys' fees. Awards of maintenance, child support and attorneys' fees are within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion. *Bender v. Bender*, 123 Ariz. 90, 597 P.2d 993 (App.1979).

■ In making its orders regarding child support and attorneys' fees, the trial court was required to consider the financial resources of both the husband and wife. A.R.S. §§ 25–320(A)(2) and (5); 25–324. One of the findings the trial court was required to make concerning the husband's request for spousal maintenance was whether the husband *"[l]acks sufficient property, including property apportioned to such spouse, to provide for his ... reasonable needs."* (emphasis added).

---

**3.** It could be argued that if the legislature chose to give to the judgment creditor the benefit of the higher interest on the underlying obligation, why not give the debtor the same advantage if he contracted for a lower rate. This argument is one which would more appropriately be ad-

dressed to the legislature. We can only surmise that after default in payment, court action and merger of the debt into a formal judgment, the debtor may be considered to have no standing to urge the benefit of his bargain.

In following the mandate of the relevant statutes, the trial court clearly considered the husband's award of a substantial equity interest in the home to be a primary source of income for the husband. This is apparent from the trial court's deferral of child support payments until the house was sold and the proceeds distributed.

This court has significantly reduced the value of the husband's interest in the Paradise Valley residence. The trial court's orders may be inappropriate in light of these changed circumstances. *Cf. Winner v. Winner,* 370 So.2d 845 (Fla.App.1979) (where the appellate court remanded the case to allow the trial court to re-assess its orders concerning alimony and attorneys' fees after the appellate court reversed the trial court's award of $16,000 in personalty to the wife.) Therefore, the trial court is ordered to make new orders on remand concerning support, maintenance, and attorneys' fees.

## IV. DIVISION OF THE COMMUNITY PERSONALTY

The husband also contests the trial court's disposition of the community furniture, furnishings and artwork. He argues that A.R.S. § 25–318(A) requires the trial court to equitably divide the community property and that the trial court failed to do so.

In particular, Michael Berger alleges that the value of the furnishings and artwork was $67,315 and that Mrs. Berger received approximately 90% of those assets' value. He further maintains that even if the trial court's finding that the furnishings had a value of $19,400 is accepted, by his calculation the wife received 81% of the assets. Jacquelyn Berger acknowledges that she received most of the community furnishings but contends that this disposition under the circumstances was not "inequitable". We agree.

■■■ The trial court has wide discretion in the apportionment of community property under § 25–318 and all reasonable inferences are taken in favor of sustaining the trial court's judgment. *Lindsay v.*

*Lindsay,* 115 Ariz. 322, 565 P.2d 199 (App. 1977); *Neely v. Neely,* 115 Ariz. 47, 563 P.2d 302 (App.1977); *Nelson v. Nelson,* 114 Ariz. 369, 560 P.2d 1276 (App.1977). As the husband notes, the apportionment must be substantially equal absent sound reasons appearing in the record which justify a contrary disposition of assets. *Hatch v. Hatch,* 113 Ariz. 130, 547 P.2d 1044 (1976); *Tester v. Tester,* 123 Ariz. 41, 597 P.2d 194 (App.1979); *Buttram v. Buttram,* 122 Ariz. 581, 596 P.2d 719 (App.1979); *Lindsay, supra.*

On the basis of the record, it appears that the trial court divided all community assets other than the furniture, furnishings and objects of art substantially evenly. Most of the art collection was found to be either the wife's or the husband's separate property and distributed accordingly. The disparity in values of community personalty as found by the court and those advocated by husband is principally referable to the household furniture and furnishings. Mr. Harold Clark, an expert appraiser, appraised 59 articles of furniture and furnishings and fixed their value at $19,419.00. If items were omitted from his appraisal, the court was justified in treating them as of small value in view of Clark's general characterization of the property as of very poor quality, the sort that would be sold at local wholesale used furniture auctions.

However, assuming the disparity in values of the household furniture and furnishings awarded to the respective parties to be as great as husband contends, there were equities in favor of the wife which justified the court's unequal division. She paid for the property with her separate funds and the furniture and furnishings were necessary to maintain the house in a suitable condition as a home for the children whose custody she was awarded. Moreover, her separate funds were the major source for the support of the family, including the husband, during the marriage.

■■■ A substantial equivalent distribution of property is not required if sound reason justifies an unequal distribution.

*Hatch, supra; Neely, supra.* The court may consider the respective contributions of money made by the parties to acquire the property in reaching its decision as to an equitable division. *Wayt v. Wayt,* 123 Ariz. 444, 600 P.2d 748 (1979); *Laughlin v. Laughlin,* 61 Ariz. 6, 143 P.2d 336 (1943); *McFadden v. McFadden,* 22 Ariz. 246, 196 P. 452 (1921). In *Wayt,* our supreme court recognized that the wife's substantial contributions from her separate estate to purchase the residence property, plus the fact that her separate funds had been the primary source of support for herself and her husband during the marriage were valid considerations to support the award of the home, worth $70,000, to the wife, and other real estate, worth $5,000, to the husband.

## V. HOME PURCHASE OPTION

The husband next argues that the trial court erred in granting the wife an option to purchase his interest in the residence for $86,520.00. He maintains that this constitutes an equitable division of the joint tenancy property. According to the husband, the trial court must divide the property equally and has no authority to equitably divide joint tenancy property acquired before August, 1973, citing *Jankowski v. Jankowski,* 114 Ariz. 406, 561 P.2d 327 (App.1977). Title to the residence was acquired in 1972.

The husband testified he was agreeable that the residence be awarded to the wife provided the court awarded him whatever value was established as his one-half interest therein. The option price was arrived at by deducting the mortgage indebtedness from the agreed value of the property, dividing the equity balance into two equal shares, then setting off against the husband's share certain indebtedness due from him to the wife under the decree. Granting the wife the option to purchase was tantamount to ordering the house sold for its agreed value and dividing the proceeds equally (without incurring any costs of sale). Under the circumstances, permitting the wife to be the purchaser through the device of an option was a mere routine method of implementing an equal division of the property.

Assuming, however, that the granting of the option constituted an unequal but equitable distribution of the property, we nevertheless find that the trial court had authority to grant the option. In 1980, the legislature enacted subsection D of § 25–318 which provided that the provisions of § 25–318 enacted in 1973 "apply through both prospective and retrospective operation to property without regard to the date of acquisition." The 1973 provision in § 25–318 gave the trial court the power to divide joint tenancy property equitably.

Subsection D took effect on July 31, 1980, prior to the September 17, 1980 dissolution decree. Consequently, at the time of the decree, the trial court had the authority to divide the pre-1973 property equitably. *See Jordan v. Jordan,* 132 Ariz. 38, 643 P.2d 1008 (1982).

Therefore, we affirm the trial court's granting of an option to the wife. On remand, the trial court is ordered to readjust the option price in light of our holding on the issue of reimbursement for the joint tenancy improvements.

## VI. $18,000 TRUST ACCOUNT

Finally, the husband raises an issue concerning the disposition of $18,000 in his attorneys' trust account. The trial court found that the $18,000 was community property and ordered that the amount be divided equally between the parties. In determining the option price necessary to compensate the husband for his interest in the home, the trial court deducted $9,000, the wife's interest in the account money. The husband contends that the trial court erred in failing to enter an order specifically awarding him the full $18,000 account sum after allowing Mrs. Berger the $9,000 credit.

On remand, the trial court must re-evaluate the appropriate option price in consideration of Jacquelyn Berger's reimbursement rights. It is possible that the trial court may choose to apply the husband's one-half

interest in the trust fund to partial satisfaction of the wife's reimbursement rights and apply the wife's interest therein to the option price. This it may do under its power to divide joint and community property equitably. Therefore, we decline to make any orders concerning the $18,000 trust account in this appeal.

## VII. CONCLUSION

We vacate the trial court's orders concerning the parties' respective interests in the Paradise Valley residence. To the extent that the trial court's orders concerning the option price may be inconsistent with this opinion, they are vacated.

In light of the foregoing, the trial court's orders regarding child support, spousal maintenance and attorneys' fees are vacated. The trial court is ordered to make new orders concerning the parties' needs pursuant to the relevant statutory criteria in light of the changed circumstances.

We affirm the trial court's orders with respect to the promissory notes and the community furnishings. The case is remanded for proceedings conforming to and consistent with this opinion.

KLEINSCHMIDT, P.J., and CONTRERAS, J., concur.

NOTE: The Honorable YALE McFATE, a Retired Judge of a court of record, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 20.

## SUPPLEMENTAL OPINION

YALE McFATE, Judge (Retired).

Appellant has filed what has been designated as a "Motion to Clarify" an alleged ambiguity appearing in the court's opinion of September 27, 1983. In substance and in accordance with Rule 22, Arizona Rules of Civil Appellate Procedure, appellant's motion is a motion for reconsideration and will be considered as such by this court. Appellee has filed a written response. We have granted appellant's motion for reconsideration and issue a supplemental opinion.

The appellant's motion reads in part as follows:

In its formal holding regarding the reimbursement issue, this Court stated: "Hence, the wife's right to reimbursement relates to one-half of that percentage of the value of the improvements at time of trial which her separate expenditures bear to the total cost including the construction loan." ... The ambiguity complained of appears in this sentence. The opinion clearly indicates that Appellant is entitled to recover the appreciated value of her improvements. However, this sentence could be read to give the Appellant only one-half of the appreciated value and to give the other half to her husband, the nonimproving co-tenant. Appellant requests that this Court clarify its statement in the above-mentioned sentence, by indicating that the reimbursement, which Appellant is entitled to, is to be paid by her husband, the co-tenant. ...

We deem it appropriate to clarify our opinion as it relates to the general measure and source of reimbursement on account of the wife's separate property contribution. In doing so, there are certain basic legal concepts which should be borne in mind.

When the wife used her separate funds to pay for improvements to the property held in joint tenancy, those improvements became a part of the realty and were likewise held in joint tenancy. Both sides conceded this point and no issue was made of it on appeal.

■ On division of the property the wife had an equitable right to be reimbursed for the enhanced value of that portion of the improvements which were paid for with her separate funds, before distribution of any residue to the joint owners. (See authorities cited in original opinion.) In this connection it is important to bear in mind that the source from which the funds are to be reimbursed is the corpus of the jointly held property, in which each spouse holds a one-half distributive interest.

Accordingly the wife is entitled to be reimbursed for that proportion of the total value of the improvements at the time of trial which her original separate contribution bears to the total cost of the improvements. As noted in the original opinion, the $65,000 construction loan should be included in this latter figure. Reimbursement to the wife is to first be charged against the corpus of the jointly held property. After such reimbursement, the parties are entitled to share equally in the balance. Hence any reimbursement from the corpus of the jointly owned property results in depleting the distributive share of each of the parties in equal amounts.

Insofar as the holdings in our original opinion are susceptible to a different construction than the one herein set forth, such holdings are modified to conform with this supplemental opinion.

CONTRERAS and KLEINSCHMIDT, JJ., concur.

*Note:* The Honorable YALE McFATE, a Retired Judge of a court of record, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 20.