NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DIANE E. EGIZII, *Plaintiff/Appellee,*

*v.*

DAVID M. EGIZII, *Defendant/Appellant.*

No. 1 CA-CV 17-0199
FILED 4-12-2018

Appeal from the Superior Court in Maricopa County
No.  CV2014-054538
The Honorable Susan M. Brnovich, Judge

**REVERSED AND REMANDED IN PART; AFFIRMED IN PART**

COUNSEL

Jeffrey M. Proper PLLC, Phoenix
By Jeffrey M. Proper
*Co-Counsel for Defendant/Appellant*

Bonnie L. Booden Attorney at Law, Phoenix
By Bonnie L. Booden
*Co-Counsel for Defendant/Appellant*

Viles Law Office LLC, Phoenix
By James E. Viles
*Counsel for Plaintiff/Appellee*

---

**MEMORANDUM DECISION**

---

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1         Defendant/Appellant David Egizii argues the superior court erred in deciding Plaintiff/Appellee Diane Egizii did not owe him contribution for either mortgage payments or maintenance and repairs on a home they owned as joint tenants. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

**FACTS AND PROCEDURAL BACKGROUND**[1]

¶2         David and Diane were married in Arizona in June 1970 and divorced in June 1972. The couple briefly separated following their divorce but reconciled shortly thereafter and stayed together for more than four decades. The couple never got remarried and had separate finances throughout the remainder of their relationship.

¶3         In June 1988, David and Diane purchased a foreclosed property in "bad disrepair"on East Arroyo Verde Drive (the "Arroyo Home") through a trustee sale. The trustee's deed upon sale conveyed the property to "David M. Egizii and Diane E. Egizii, his wife, as joint tenants with right of survivorship." David and Diane took title to the Arroyo Home subject to the previous homeowners' existing loan with the Saguaro Savings and Loan Association (the "Saguaro Mortgage"). Also in June 1988, David took out a second loan for $100,000, secured by a deed of trust on the Arroyo Home, from Metropolitan Bank (the "Metropolitan Mortgage").

¶4         The parties lived together in the Arroyo Home, raised two children together, and represented themselves as a married couple to friends, neighbors, and business associates. David earned the majority of the couple's income, while Diane started multiple small businesses and performed the majority of the housework and yardwork. Both David and

---

[1] We view the facts in the light most favorable to upholding the superior court's ruling. *Sw. Soil Remediation, Inc. v. City of Tucson*, 201 Ariz. 438, 440, ¶ 2 (App. 2001).

Diane contributed portions of their incomes to shared household expenses, and both paid for various renovations to the house and property.

¶5            In March 2014, Diane moved out of the Arroyo Home, as the relationship had grown increasingly "corrosive." In October, Diane initiated a partition action of the Arroyo Home.

¶6            After a bench trial, the superior court ordered that the Arroyo Home be listed for sale and the proceeds from the sale be applied as follows: After the payment of costs and expenses incurred in the sale and any outstanding mortgages or liens, David would receive payment for approximately $19,000 paid for homeowner's insurance, $71,000 paid for property taxes, and $183,000 paid from his sole and separate funds used to buy the Arroyo Home. The remaining proceeds would be split equally, but Diane would pay David approximately $39,000 for satisfaction of an outstanding loan plus attorney fees from her share.

¶7            David filed a motion for reconsideration, arguing he was entitled to reimbursement for payments he had made to satisfy both the Saguaro and Metropolitan Mortgages. The court held:

> First, the Court does not believe that Defendant [David] provided proof at trial that the mortgage was a joint obligation. At trial, Defendant was adamant that he purchased the property with sole and separate funds, the house was his alone, and he made the mortgage payments from his sole and separate funds. In addition, the Court found that Defendant received all of the benefit of paying the mortgage throughout the years by taking the tax deduction. Defendant also testified the mortgage funds were used by him to pay his bills. In Equity, the Court denied Defendant's request for contribution.

Accordingly, the court denied David's motion for reconsideration.

## DISCUSSION

¶8            Under Arizona Revised Statutes ("A.R.S.") sections 12-1218(B) and (C), real property that cannot be fairly partitioned without depreciating its value must be sold by an appointed commissioner; the court must then divide the proceeds of the sale "between the persons

3

entitled thereto according to their respective interests."[2] The fundamental objective in a partition suit is to equitably divide a property so as to confer no unfair advantage on any cotenant, but "the only relevant equities are those which arise out of the relationship of cotenancy."[3] *McCready v. McCready*, 168 Ariz. 1, 3 (App. 1991) (citation omitted); *see also Collier v. Collier*, 73 Ariz. 405, 414 (1952) (partition is an equitable proceeding). We review the superior court's exercise of equitable discretion for abuse thereof. *See Michaelson v. Garr*, 234 Ariz. 543, 544, ¶ 5 (App. 2014). The court "abuses its discretion when it makes an error of law in reaching a discretionary conclusion or when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision." *Id.* (citation omitted).

## I.    Contribution for Mortgage Payments

**¶9**        David argues the superior court erred by ruling that he was not entitled to reimbursement for payments toward the Saguaro Mortgage. He claims there is not substantial evidence in the record to support the superior court's characterization of the Saguaro Mortgage as David's sole responsibility, and that the court wrongly conflated the Saguaro and Metropolitan Mortgages after considering his motion for reconsideration. We agree.

**¶10**        "The ownership of property by joint tenancy originally derives from common law" and is fundamentally "a way two or more persons take and hold property as if they were one person." *Graham v. Allen*, 11 Ariz. App. 207, 208 (App. 1970). Generally, then, "[w]hen one joint tenant expends sums to benefit the other joint tenant, . . . the paying joint tenant is entitled to reimbursement." *Bowart v. Bowart*, 128 Ariz. 331, 337 (App. 1980) (wife was entitled to reimbursement for using her separate funds to pay the spouses' joint-tenancy obligations, including mortgage payments and taxes); *see also Valladee v. Valladee*, 149 Ariz. 304, 309 (App. 1986) ("Under the general rules of joint tenancy, a tenant has a right to contribution from

---

[2] We cite to the current version of the applicable statute unless revisions material to this decision have occurred since the events in question.

[3] Despite their marriage-like relationship throughout their joint ownership of the Arroyo Home, David and Diane were not married and we do not consider any equities relating thereto. *See Carroll v. Lee*, 148 Ariz. 10, 16 (1986) ("[T]he law will not give non-marital cohabiting parties the benefit of community property.").

his cotenants for expenditures . . . made for the benefit of the common property." (citations omitted)); *Brown v. Brown*, 58 Ariz. 333, 336 (1941) (It is "well settled that, where one of two obligors equally bound pays off and discharges the obligation, he is entitled to recover from the other the proportion that he was obligated to pay."). "However, before a tenant can claim a right to such contribution, it must appear that there existed a common obligation or liability among the cotenants at the time the contributing tenant made the expenditure or incurred the obligation." *Valladee*, 149 Ariz. at 309 (citations omitted).

¶11         In both its initial ruling and its ruling following David's motion for reconsideration, the superior court appears to have conflated the Saguaro and the Metropolitan Mortgages. The court referred only to "the mortgage payments" and "the mortgage" in its rulings, finding David had provided no proof that "the mortgage" was a "joint obligation" but rather that he had used the mortgage funds to pay his own bills. As David acquiesces, this characterization holds true as applied to the Metropolitan Mortgage. Simply stated, there was no evidence at trial that the Metropolitan Mortgage was a common obligation incurred for the benefit of both joint tenants. David testified that those funds were used to pay off "whatever debt [he] had at that time" and that Diane's name was only on the loan because "the bank wouldn't loan the money without both signatures."

¶12         The record clearly establishes, however, that the facts surrounding the Saguaro Mortgage do not support the superior court's characterization of "the mortgage" as David's sole obligation. The available evidence instead demonstrates that the Saguaro Mortgage was a preexisting obligation that David and Diane jointly assumed at the time they took title to the Arroyo Home and under which they were equally bound.

¶13         First, Diane testified that she was aware she and David were "assum[ing] a loan that was against the property already" and that she herself had made some mortgage payments at some point, although she had no records or evidence thereof. David testified that they purchased the Arroyo Home through a foreclosure and it was "subject to a first mortgage," initially held by Saguaro Savings and ultimately held by Bank of America. David also testified that he paid approximately $212,000 over the life of the Saguaro Mortgage.

¶14         Second, the trustee's deed upon sale proclaimed that the Arroyo Home was conveyed to "David M. Egizii and Diane E. Egizii, his

wife, as joint tenants with right of survivorship," pursuant to "the authority and powers given to Trustee by law and by that certain Deed of Trust . . . made by Warren L. Foletta and Judith E. Foletta, his wife." The deed of release and reconveyance eventually sent to David from Bank of America noted that "the indebtedness secured by the Deed of Trust executed by Warren L. Foletta and Judith E. Foletta (Trustors) to Saguaro Services Inc. (Trustee) for Saguaro Savings and Loan Association (Beneficiary) dated 05/10/1977 . . . has been fully paid." David testified that the "first mortgage holder would not take Warren F[o]letta off of . . . any documents," and that the first mortgage was released in the name of the Folettas after he had paid it off in full. Further, Bank of America sent a letter, dated March 2006 and addressed to "Warren Foletta/Judith Foletta/C/o David Egizii," returning one of David's checks because "the loan is now paid in full."

¶15        The record is clear that the Arroyo Home was subject to an existing mortgage at the time David and Diane took title as joint tenants in 1988. They both benefitted from assuming the Saguaro Mortgage, as doing so allowed them to jointly take title to the property. There is no competent evidence contradicting David's testimony that the Saguaro Mortgage was a joint obligation and that he paid it off over time from his own finances. The superior court therefore abused its discretion by concluding that the Saguaro Mortgage was David's sole responsibility. The Saguaro Mortgage was a joint obligation David and Diane assumed together, and David is entitled to contribution for the mortgage payments he made in extinguishing that joint debt over the years. We therefore remand to the superior court for a determination of the exact amount to which David is entitled from the proceeds of the sale of the Arroyo Home.

## II.        Contribution for Maintenance and Repairs

¶16        David argues the superior court erred by not awarding him contribution for the maintenance and repair expenses he put into the Arroyo Home over the years. He contends that this court should award him reimbursement—not only for the list of over $10,000 worth of itemized expenditures he submitted to the superior court as "maintenance repairs and utilities"—but also for over $72,000 he submitted as "improvements" because the superior court should have categorized those items as maintenance and repairs as well. David's opening brief is virtually devoid of any controlling or even persuasive authority supporting either proposition. He has therefore waived these arguments on appeal. *See State v. Carver*, 160 Ariz. 167, 175 (1989) ("In Arizona, opening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised. Failure to argue a claim usually constitutes

abandonment and waiver of that claim."(citations omitted)); ARCAP 13(a)(7)(A).

¶17        Further, even if he had not waived the argument that maintenance and repair costs are categorically distinct from improvements, we are not persuaded that we should assess their reimbursable value differently. Arizona law does not clearly dichotomize these proposed categories, but it is a well-established rule that, "[w]here a co-tenant makes improvements in good faith, which are permanent and useful or necessary to the enjoyment of the property, the court as a general rule awards him the resulting increase in the value of the estate, and not the actual cost" of the improvements. *In re Marriage of Berger*, 140 Ariz. 156, 163 (App. 1983) (citations omitted). The record supports the superior court's finding that:

> The Court finds the testimony of Zach Bunch credible that this property is valuable as a "knock down" property. In other words, the improvements didn't increase the value of the property because this is the type of property that someone buys to knock down the house and rebuil[d].

We therefore decline to award David contribution for any improvements, maintenance, or repairs.

## CONCLUSION

¶18        For the foregoing reasons, we reverse and remand on the issue of contribution for the Saguaro Mortgage, but affirm the court's denial of contribution for David's claimed improvements, maintenance, or repairs.



AMY M. WOOD • Clerk of the Court
FILED:  AA